## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

UNITED STATES OF AMERICA      )
          )
          )
          )
      v.          )      **Criminal No. 2016-0009**
          )
**SERGIO QUINONES-DAVILA,**      )
**JOSE R. HODGE, et al.,**      )
          )
      **Defendants.**      )
          )

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Kye Walker, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Sergio Quinones-Davila*

**Renee D. Dowling, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jose R. Hodge*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Sergio Quinones-Davila's "Motion to Exclude Event No. 4 and All Evidence Related to the Traffic Stop Described in Event No. 4" filed on May 6, 2017. (Dkt. No. 788), and Defendant Jose Hodge's oral motion to exclude Event No. 1(b). The parties have fully briefed the issues raised in Defendant Quinones-Davila's Motion and Defendant Hodge's Motion, and the Court heard argument on the Motions at a status conference on May 10, 2017. For the reasons discussed below, the Court will deny both Motions.[1]

---

[1] In a telephonic status conference held on May 12, 2017, the Court informed the parties that the Motions would be denied, with an Opinion to follow.

# I. PROCEDURAL HISTORY

Defendant Quinones-Davila and Defendant Hodge are two of six defendants who are charged in a seven-count indictment in which the Government charges the defendants with conspiracy to possess controlled substances with intent to distribute, possession of cocaine with intent to distribute, and attempted possession of cocaine with intent to distribute. (Dkt. No. 190). Defendant Hodge is also charged with bulk cash smuggling. (*Id.* at 10). These charges are based on allegations that, between January 2012 and December 2015, the defendants conspired and agreed with one another, and others, to possess cocaine powder and distribute it, and that some of the defendants travelled by boat south of St. Croix to effect the mid-sea retrieval of cocaine, returned to St. Croix with the drugs, and transshipped them to Puerto Rico. Jury selection in this matter commenced on May 2, 2017, and concluded with the selection of eighteen jurors on May 4, 2017. The Court stood in recess on May 5, 2017, and during the week of May 8, 2017.[2] As of Friday, May 12, 2017, when the Court advised the parties of its decisions on the instant Motions (*see supra* note 1) opening statements were scheduled to commence on Monday, May 15, 2017.[3]

---

[2] The Court stood in recess during the week of May 8, 2017, to accommodate counsel for Defendant Gutierrez-Calderon, who had a scheduling conflict.

[3] On May 15, 2017, moments before the parties were scheduled to deliver opening statements in the trial of this matter, the Government disclosed for the first time approximately thirty-six documents and twenty-three audio recordings, which it asserted were inadvertently withheld. During the resulting discussion regarding the new discovery, counsel for Defendants informed the Court that they would need three days to review the new discovery, and that they could not present opening statements prior to the review. In view of the foregoing, the Court proceeded with the Government's opening statements on May 15, 2017, but continued further proceedings in the trial until Friday May 19, 2017. The Court subsequently continued the trial until Monday, May 22, 2017, in response to Defendant Quinones-Davila's contention that more time was needed to recast the defense case in light of the Government's untimely disclosure.

## II. DEFENDANT QUINONES-DAVILA'S MOTION

### A. BACKGROUND

On Saturday May 6, 2017, two days after the Court had completed the selection of the jury, Defendant Quinones-Davila filed the instant Motion in which he contends that Event No. 4 in the Indictment—an October 2014 seizure of $24,200 from Quinones-Davila's vehicle following a traffic stop and consent search,[4]—"does not bear a sufficient nexus to the charged conspiracy and is improper prior bad act evidence." (Dkt. No. 788 at 1). He also contends that there was "no reasonable suspicion to support the traffic stop such that all evidence related to that stop is fruit of the poisonous tree." (*Id.*).

In support of his contention that evidence of Event No. 4 should be excluded, Defendant Quinones-Davila argues that: (1) his possession of the cash is not itself a crime and does not bear a sufficient nexus to the conspiracy, as the Government does not connect the cash to any of the drug transactions listed in the Indictment or any acts in furtherance of the conspiracy; (2) evidence of the traffic stop is subject to the requirements of Federal Rule of Evidence 404(b) because the evidence is not intrinsic to the charged conspiracy; and (3) under the Rule 404(b) analysis, evidence related to the traffic stop should be excluded because it serves no proper purpose under Rule 404(b), is not relevant under Rule 402, and—to the extent it is relevant—its probative value is substantially outweighed by the risk of unfair prejudice. (*Id.* at 3-4).

Regarding his argument that the evidence from the traffic stop was obtained in violation of his constitutional rights, Defendant Quinones-Davila asserts that "there was no reasonable suspicion to continue the traffic stop past the initial inquiry regarding the speed limit and [the]

---

[4] Event No. 4 in the Indictment states as follows: "On October 23, 2014, a Florida Highway Patrol Trooper stopped Quinones-Davila for speeding on the Florida Turnpike. A consent search revealed $24,200 in United States Currency inside Quinones-Davila's vehicle." (Dkt. No. 190 at 6).

request for [his] driver's license" and that the "continued questioning of Mr. Quinones-Davila" and subsequent searches of his vehicle were unsupported by reasonable suspicion. (*Id.* at 4).

The Government filed its "Response to Quinones' Motion to Exclude Evidence Related to Event No. 4" on May 8, 2017. (Dkt. No. 810). In its Response, the Government argues that Defendant Quinones-Davila's unexplained possession of a large amount of cash is probative of commission of the drug conspiracy charged in Count 1; evidence related to Event No. 4 is intrinsic to the crime of conspiracy and thus not subject to the requirements of Rule 404(b); and although still subject to Rule 403, the probative value of the Event No. 4 evidence is not substantially outweighed by the danger of unfair prejudice. (*Id.* at 4-7). The Government further argues that Defendant Quinones-Davila's contention regarding the unconstitutionality of the traffic stop and resulting searches is, in fact, a "veiled motion to suppress," which should be denied as untimely. (*Id.* at 7). Alternatively, the Government argues that even if Defendant Quinones-Davila's motion to suppress is considered on the merits, it should be denied because the evidence was discovered after a lawful traffic stop and a consensual search of the car. (*Id.* at 7-9).

On the morning of the May 10, 2017 status conference in this matter, Defendant Quinones-Davila filed a "Reply to Opposition to Exclude Event No. 4 and Evidence Related to Event No. 4." (Dkt. No. 815). In Defendant Quinones-Davila's Reply, he asserts that "up until April 7, 2017 the Government represented to the defendants that it had no discovery related to the traffic stop." (*Id.* at 3). He further asserts that "[o]n January 27, 2016, the Government produced its first round of discovery . . . none of which included the October 23, 2014 traffic stop of Sergio Quinones-Davila." (*Id.* at 2). Defendant Quinones-Davila then asserts that "[o]n March 31, 2017, just a month

before trial and for the first time, the Government produced, via e-mail, a single incident report regarding the traffic stop referenced in Event No. 4." (*Id.* at 2).[5]

In view of the untimeliness of Defendant Quinones-Davila's Motion to Exclude Evidence relating to Event No. 4 based on the alleged unconstitutionality of the traffic stop and Defendant Quinones-Davila's contention that the untimeliness was due to the late disclosure of the relevant discovery by the Government, the Court inquired further into the untimeliness issue at the May 10 status conference. Counsel for Defendant Quinones-Davila, Kye Walker, Esq., reiterated the position previously advanced in Defendant Quinones-Davila's written submission regarding the Government's tardy disclosure of discovery. On the other hand, counsel for the Government, Assistant United States Attorney Alphonso Andrews, maintained that, with the exception of an incident report and some photographs—which were not received by Government counsel until recently and were immediately provided to Defense counsel on March 31 and April 7—the relevant discovery on Event No. 4 was produced to Attorney Walker by submission dated June 27, 2016. Given the discrepancies in the accounts provided by counsel, and the importance of the issue to the timeliness of Defendant Quinones-Davila's constitutional challenge to the evidence related to Event No. 4, the Court ordered Attorney Walker to review her files and advise the Court whether she had received the June 27, 2016 discovery to which Government counsel referred. (Dkt. No. 818).

On May 11, 2017, Defendant Quinones-Davila filed his "Memorandum Regarding Receipt of Incident Report Bates Stamped #136" (Dkt. No. 821), in which counsel for Defendant

---

[5] Attached to Defendant Quinones-Davila's Reply is the March 31, 2017, email from counsel for the Government. In relevant part, the email states as follows: "See attached incident report re stop of Quinones in Florida in Oct 2014. This report is by a different officer to the one mentioned in Discovery No. 136. Formal discovery to follow." (Dkt. No. 815-4).

Quinones-Davila, Attorney Walker, acknowledges that a courier from her office picked up the June 27, 2016 discovery from the United States Attorney's office on June 28, 2016. Attorney Walker states, however, that, contrary to her normal office procedures, the contents of the discovery, which were delivered on a CD, were not transferred to Attorney Walker's electronic file, nor printed for the physical file. *Id.* As a result, Attorney Walker represents that she "did not review the contents of the disc, missed the incident report bates stamped #136 and, at all times, believed and consider[ed] the original disclosure of bates stamped items 1-251 as the relevant discovery in this case." (*Id.* at 2). Attorney Walker nonetheless argues that the Court has discretion to entertain an untimely motion upon a showing of good cause and the Court should exercise that discretion under the circumstances here. In this regard, Attorney Walker asserts that, "the suppression issue was not raised earlier due to the undersigned's inadvertent failure to process the contents of the disc provided on June 28, 2016." (*Id.* at 3).

On May 11, 2017, the Government filed its "Response to Quinones' Memorandum re Receipt of Incident Report." (Dkt. No. 823). In its Response, the Government attempts "to refute any suggestion that the untimely filing of Defendant [Quinones-Davila's] motion to suppress is excusable based on good cause." (*Id.* at 1). In this regard, the Government states that the December 29, 2015 Information contains only two counts involving ten defendants and that the associated discovery, which was disclosed on January 27, 2016, consists of 251 pages. (*Id.* at 2). The Government contrasts this with the May 10, 2016, and the August 23, 2016 Indictments, in which the counts increased to seven and involve twelve defendants. (*Id.*). The Government states that on June 27, 2016, it provided the first set of discovery for the May Indictment, which consists of pages 1 to 659. (*Id.* at 3). The Government further states that a second set of discovery was provided on September 1, 2016, consisting of pages 660 to 731; a third set of discovery was

provided on September 28, 2016, consisting of pages 732 to 869; and a fourth set of discovery was

produced on October 14, 2016, consisting of pages 870 to 920. (*Id.* at 4). The Government asserts

that, given the expansion of the case since the initial January 2016 discovery and the subsequent

sequentially numbered discovery that was disclosed, Attorney Walker's representation that she

believed the relevant discovery to consist of pages 1 to 251 is "difficult to understand." (*Id.*).

**B.     DISCUSSION**

**1.     Untimely Motion to Suppress**

At the outset, the Court agrees with the Government that Defendant Quinones-Davila's

attempt to "exclude" evidence of the cash obtained during Event No. 4 on the grounds that the stop

was not supported by reasonable suspicion is a thinly veiled motion to suppress. Moreover, it is

clear that the untimeliness of this motion to suppress was egregious. Specifically, a redacted

indictment setting forth Event No. 4 and Defendant Quinones-Davila's alleged involvement was

filed on May 12, 2016. (Dkt. No. 6).[6] The deadline for pretrial motions expired on August 31,

2016. (Dkt. No. 155). Jury selection commenced on May 2, 2017. And, Defendant Quinones-

Davila's instant Motion was filed on May 6, 2017. (Dkt. No. 788).

In *United States v. Staton*, 605 F. App'x 110, 113 (3d Cir. 2015) the Court held that "the

District Court did not abuse its discretion in denying [defendant's] motion to suppress as untimely"

where the motion was filed "more than a month after the District Court's deadline for pretrial

motions [and] without good cause for the delay." *Id.* at 113-14. In so holding, the Court in *Staton*

stated: "Motions to suppress must be made by the deadline for pretrial motions established by the

district court. Fed. R. Crim. P. 12(b)(3)(C), (c)(1). 'If a party does not meet the deadline for making

---

[6] The First Superseding Redacted Indictment, which is identical to the May 12 redacted indictment
as to Event No. 4, was filed on August 23, 2016. (Dkt. No. 181).

a [motion to suppress], the motion is untimely,' and deemed waived absent a showing of 'good cause' for the delay." *Id.* at 113 (quoting *United States v. Rose*, 538 F.3d 175, 177 (3d Cir. 2008)).

Here, Defendant Quinones-Davila filed the instant Motion more than eight months after the deadline for filing pretrial motions had expired, and after jury selection in the case had concluded. Even if the Court were to read Defendant Quinones-Davila's May 11 Memorandum Regarding Receipt of Incident Report as a motion for leave to accept his untimely motion to suppress, the Court finds that Defendant Quinones-Davila has failed to make the requisite showing of good cause.

First, as acknowledged by Attorney Walker in the "Memorandum Regarding Receipt of Incident Report Bates Stamped #136," as of June 28, 2016, counsel had in her possession more than ample information to file a motion to suppress. (*See* Dkt. No. 821 at 1-2). As of that date, she had not only the allegations in the May 12, 2016 Redacted Indictment that the Event No. 4 seizure of the $24,200 occurred after Defendant Quinones-Davila's vehicle was stopped for speeding and he consented to a search of his car, but also the June 27, 2016 discovery which contains the incident report authored by David Cimino, the Trooper who effectuated the stop and subsequent searches. Although the Court recognizes that mistakes do occur, and credits Attorney Walker's representation that overlooking the June 27, 2016, discovery was inadvertent, the Court cannot ignore the fact that Attorney Walker had sufficient relevant information regarding Event No. 4 to file a motion to suppress since June 28, 2016. Inadvertent though it was, Attorney Walker failed to identify her error for over ten months, during which time the deadline for pretrial motions passed, the Court held pretrial conferences, the jury was selected, and the Court held additional conferences with counsel for the parties during the course of the three-day jury selection. The

Court commenced with the Government's opening statement on Monday, May 15 in what is expected to be a four-to-five-week trial.[7]

In addition, as the Government notes in its May 11, 2017 "Response to Quinones' Memorandum re Receipt of Incident Report" (Dkt. No. 823), there are facts along the way that should have alerted Attorney Walker that she had inadvertently overlooked relevant discovery. For example, Attorney Walker states in her May 11 filing that "at all times, [she] believed and consider[ed] the original disclosure of bates stamped items 1-251 as the relevant discovery in this case." (Dkt. No. 821 at 2). However, Attorney Walker should have questioned why the 251 pages of discovery, which was disclosed in connection with the December 2015 Information, did not increase given the much expanded scope of the May 2016 Indictment. Likewise, the fact that a subsequent discovery disclosure provided on September 1, 2016, consisted of bates stamped numbers 660 to 731 should have prompted Attorney Walker to question why the latest discovery of which she was aware ended at page 251.[8]

Finally, even considering Attorney Walker's position that she was not aware of relevant evidence concerning Event No. 4 until March 31, 2017, when the Government emailed her one of the police reports and alluded to the existence of a previously produced report,[9] the untimely motion remains unjustified. Despite her awareness of the relevant discovery on March 31, and

---

[7] As noted above, the Court was prepared to begin trial on Monday, May 15. However, due to the Government's untimely disclosure of new discovery, the Court continued trial until May 22 in order to give Defendants time to review the new discovery and adjust their trial strategies as they deem appropriate. *See supra* note 3.

[8] Further, subsequent productions continued in sequence—from 732 to 869 and 870 to 920. (Dkt. No. 823 at 4).

[9] Even the Government's reference on March 31 to an earlier produced report ("Discovery No. 136") apparently did not prompt Attorney Walker to review her files for additional discovery. (*See* Dkt. No. 815-4).

notwithstanding that the Court held a pretrial conference in this case on April 12, a status conference on April 25, a final pretrial conference on May 1, selected the jury on May 2, 3, and 4, and held conferences with counsel throughout the three-day jury selection process, Attorney Walker did not move to suppress the evidence relating to Event No. 4 until she filed the instant motion on May 6, 2017.[10] In short, Attorney Walker choose to wait over a month after the March 31 disclosure to move to suppress the evidence obtained from the traffic stop.

In view of the foregoing, the Court concludes that Attorney Walker has failed to show good cause for the delay in filing the motion to suppress. Both parties agree—and the Court as well— that an evidentiary hearing would be necessary to address the issues raised in the motion. (Dkt. No. 810 at 7; Dkt. No. 815 at 3). However, to take the time necessary to hold an evidentiary hearing and resolve the motion at this late date would result in a further disruption of the trial schedule. Given that this trial is already projected to last four-to-five weeks and involves five other defendants and jurors who were selected on May 4, 2017, the Court deems a further delay based on the facts presented by the motion as unjustified. Accordingly, the Court will deny the portion of Defendant Quinones-Davila's motion regarding the alleged unconstitutionality of the traffic stop as untimely.

### 2. Nexus to Conspiracy

With regard to Defendant Quinones-Davila's contention that his possession of the cash on October 23, 2014, does not bear a sufficient nexus to the conspiracy, the case law is clear that "[a] defendant's access to unexplained or unaccounted for wealth is strong circumstantial evidence of involvement in illegal activity." *United States v. Cooley*, 131 F. App'x 881, 85 (3d Cir. 2005); *see*

---

[10] At all of the several pretrial and status conferences the Court heard argument and resolved various issues raised by the parties. (*See* Dkt. Nos. 563, 668, 729, 730, 785).

*also United States v. Chandler*, 326 F.3d 210, 215 (3d Cir. 2003) ("There exists considerable appellate support for the admission in evidence, in drug-trafficking cases, of financial information of the sort admitted in [defendant's] trial [*i.e.*, bank records, non-filing of tax returns]. 'In a narcotics prosecution, it is well-established that the government may introduce evidence of cash purchases coupled with tax evidence tending to show that a defendant had no legitimate source of cash.'" (quoting *United States v. Saint Prix*, 672 F.2d 1077, 1084 (2nd Cir. 1982))). Contrary to Defendant Quinones-Davila's unsupported assertion, the Government is not required to connect the cash to any of the particular drug transactions listed in the Indictment. *Cooley*, 131 F. App'x at 85 ("Moreover the government does not have to demonstrate a connection between the funds in question and a specific illegal transaction.").

Here, Defendant Quinones-Davila was found with $24,200 in cash, the possession of which—the Government proffers—he was unable to explain. The Government notes in its Response that Defendant Quinones-Davila first suggested to Government agents that it was income from work as a horse jockey; then earned from helping horse trainers; then earned from betting on horses; then a portion of it was from others who asked him to bet for them. (Dkt. No. 810 at 5). Moreover, the Government has proffered that there will be testimony at trial that Defendant Quinones-Davila had no legitimate source of income, and other evidence will show "Defendant is the 'boss' in a drug trafficking organization, has given money to individuals to pay costs associated with mid-sea drug retrievals, and has admitted to law enforcement that he travelled to St. Thomas in April 2012 with over $400,000 to buy drugs." (*Id.*).

Assuming that evidence is introduced of the nature proffered by the Government, the Court finds that Defendant Quinones-Davila's possession of $24,200 is intrinsic evidence because it "directly proves the charged offense" and would "facilitate the commission of the charged crime."

*United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). Accordingly, Defendant's possession of

$24,200 is not subject to the requirements of Rule 404(b). *Id.* at 248.[11]

The Court will similarly reject Defendant Quinones-Davila's argument that the evidence

of the $24,200 is not relevant or is unduly prejudicial. First, the evidence is relevant because

possession of large sums of unexplained cash make it more likely that Defendant Quinones-Davila

was conspiring to purchase a large shipment of cocaine or was in possession of the proceeds from

the sale of a large shipment of cocaine. *Cooley*, 131 F. App'x at 883 ("A defendant's access to

unexplained or unaccounted for wealth is strong circumstantial evidence of involvement in illegal

activity."); Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more

or less probable than it would be without the evidence; and (b) the fact is of consequence in

determining the action."). Second, the evidence survives the Rule 403 balancing test. Under Rule

403, a "court may exclude relevant evidence if its probative value is substantially outweighed by

a danger of . . . [*inter alia*] unfair prejudice." Fed. R. Evid. 403. Here, the probative value of

Defendant Quinones-Davila's possession of over $20,000 of unexplained cash is high. *See Cooley*,

131 F. App'x at 883. Regarding unfair prejudice, the Court fails to see how evidence regarding

possession of the cash unfairly prejudices Defendant Quinones-Davila. Indeed, as noted by

---

[11] In *United States v. Nelson*, 372 F. App'x 289 (3d Cir. 2010), the court held that six incidents involving recovery of large sums of cash, firearms, and narcotics from the defendant were intrinsic to the charged conspiracy and rejected the argument that the Government sought to introduce "prior crimes and bad acts and to bootstrap its conspiracy allegation." *Id.* at 292. The Court ruled, "[a]s the Government correctly notes, evidence of cocaine possession and distribution, possession of large amounts of cash and possession of firearms during the time period of an alleged drug distribution conspiracy directly proved the charges. [The defendant's] argument that the incidents are not intrinsic evidence of the conspiracy because they were removed in time from the substantive counts, is unpersuasive. These incidents, which involve possession of firearms, narcotics and large sums of cash, directly bear on the conspiracy charge." *Id.* at 292-93; *see also United States v. $506,641 in U.S. Currency*, 1996 WL 396082, at *2 (N.D. Ill. July 11, 1996) ("Several courts have held that the possession of a large amount of cash is strong evidence that the cash is connected with drug activity.") (citing cases).

Defendant Quinones-Davila in the instant motion, the possession of the cash "in and of itself is not a crime." (Dkt. No. 788 at 3). Thus, the Court finds that the high probative value is not "substantially outweighed" by the danger of unfair prejudice.

Accordingly, the Court will deny Defendant Quinones-Davila's Motion seeking to exclude evidence relating to Event No. 4 based on the alleged absence of a nexus to the charged conspiracy offense and the balancing of probative value versus unfair prejudice under Rule 403.

### III.    DEFENDANT HODGE'S MOTION

### A.    BACKGROUND

On May 3, 2017, at a conference held during the jury selection process, Defendant Hodge made an oral motion to exclude evidence regarding Event No. 1(b). Defendant Hodge argued that, contrary to what the Indictment alleges, there is no evidence tying Defendant Hodge to Event No. 1(b).

The Indictment sets forth Event No. 1 as follows:

> On March 25, 2012, HODGE and LACIEN-SANTIAGO [sic] attempted to travel from St. Croix, Virgin Islands to St. Martin through Henry Rohlsen Airport. During inspection, law enforcement discovered and seized a total of $83,519 concealed on their persons and inside of LACEN-SANTIAGO's luggage.

> On April 19, 2012, additional monies were seized from HODGE and LACEN-SANTIAGO. Law enforcement agents stopped a vessel as it was entering St. Thomas from Fajardo, Puerto Rico. They encountered six persons on board including HODGE and LACEN-SANTIAGO. The agents seized a black backpack containing $37,480, another one containing $48,540, and [a] red and black duffle bag containing $322,190 for a total of $408,210.

(Dkt. No. 190 at 5). Although the Indictment does not specify an Event No. "1(a)" and "1(b)," the parties and the Court refer to the first paragraph in Event No. 1 as Event No. 1(a) and the second paragraph as Event No. 1(b).

In response to Defendant Hodge's oral motion to exclude Event No. 1(b), the Government filed its "Trial Memorandum re Presentation of Evidence in Support of Event No. 1b" on May 4, 2017. (Dkt. No. 781-1). In its Memorandum, the Government concedes that "the evidence at trial will show that it was Quinones-Davila and Lacen, not Hodge, on the vessel from which the $408,210 was seized." (*Id.* at 2). However, the Government argues that Event No. 1(b) is still relevant in that evidence that Defendant Quinones-Davila was stopped on a vessel on April 19, 2012, with $408,210 is relevant to prove the charged offense of conspiracy to possess cocaine with intent to distribute. (*Id.* at 4). The Government further argues that proof that Defendant Quinones-Davila, as opposed to Defendant Hodge, participated in Event No. 1(b) does not prejudice either Defendant. The Government asserts that "both defendants fully well knew that Quinones-Davila was the person on the vessel on April 19, 2012" because the discovery relating to Event No. 1(b) was disclosed on June 27, 2016, and clearly implicates Defendant Quinones-Davila and not Defendant Hodge. (*Id.* at 5).

On May 8, 2017, Defendant Hodge filed his "Re[s]ponse to Government's Trial Memo re Presentation of Evidence in Support of Event No 1b." (Dkt. No. 800). In his Response, Defendant Hodge argues that Event No. 1(b) is misleading in that the Government is erroneously trying to connect the April 19, 2012, event (Event No. 1(b)) to the earlier event in which Lacen-Santiago and Defendant Hodge were allegedly stopped at the St. Croix airport on March 25, 2012 (Event No. 1(a)). (*Id.* at 1-2). Defendant Hodge argues that without this false connection to the earlier March 2012 event—which gives rise to Count 2's charge that Defendant Hodge committed bulk cash smuggling—the April 2012 event has no relevance to the charged conspiracy. (*Id.*). In a similar vein, Defendant Hodge asserts that Event No. 1(b) is prejudicial to him because he is the only Defendant charged with bulk cash smuggling and the jury will improperly infer that he was

somehow involved in the April 2012 event in which cash was seized from the vessel. (*Id.* at 2).

Defendant Hodge argues that because the April 2012 event "has not been shown to be related to any attempt or actual possession of a controlled substance with intent to distribute" evidence of Event No. 1(b) must be excluded under Rule 402 because it is irrelevant or, alternatively, under Rule 403 because it is unfairly prejudicial and confusing. (*Id.* at 2-3).

**B.    DISCUSSION**

The Court finds Defendant Hodge's arguments to be unpersuasive and will deny his motion. First, the jury will not be given a copy of the Indictment. Thus, the jury will not be privy to the erroneous inclusion of Defendant Hodge's name in Event No. 1(b). In addition, at the May 10, 2017, status conference, the Government represented to the Court that during the trial it would not refer to Event No. 1 in its entirety as evidence for the bulk cash smuggling. Rather, the Government will refer to Event No. 1(a) and Event No. 1(b) separately, and will only argue that Event No. 1(a) is evidence of bulk cash smuggling. Based on the Government's representations and the fact that the jury will not be given a copy of the Indictment, the Court sees little, if any, risk that the erroneous inclusion of Defendant Hodge's name in Event No. 1(b) will somehow confuse the jury.

The Court similarly rejects Defendant Hodge's contention that Event No. 1(b) is not relevant and is unfairly prejudicial given that it is not linked to the charged conspiracy offense. As discussed above in connection with Defendant Quinones-Davila's Motion, unexplained possession of large amounts of cash is highly probative circumstantial evidence of illegal activity. *Cooley*, 131 F. App'x at 883 ("A defendant's access to unexplained or unaccounted for wealth is strong circumstantial evidence of involvement in illegal activity."); *Chandler*, 326 F.3d at 215 ("In a narcotics prosecution, it is well-established that the government may introduce evidence of cash

purchases coupled with tax evidence tending to show that a defendant had no legitimate source of cash." (quoting *Saint Prix*, 672 F.2d at 1084)) (quotations omitted). Indeed, the Government proffers that it will introduce evidence that Defendant Quinones-Davila made a "post-arrest admission that the over $400,000 seized [during Event No. 1(b)] belonged to Lacen-Santiago and that 'they' were headed to St. Thomas to buy cocaine." (Dkt. No. 781-1 at 4).[12]

Thus, the relevance of the April 2012 event (Event No. 1(b)) to the charged conspiracy is clear in that possession of the large sum of money makes it more probable that, *inter alia*, Defendant Quinones-Davila's alleged post-arrest statement regarding traveling to St. Thomas to purchase cocaine is true. Fed. R. Evid. 401. Likewise, under the Rule 403 balancing test, the probative value of such a large amount of cash in connection with Defendant Quinones-Davila's alleged post-arrest statement is high. To the extent that there is any danger that the jury would be misled or confused regarding Event No. 1(b), such danger does not substantially outweigh the high probative value of the evidence. Fed. R. Evid. 403.

Accordingly, because there is little risk, if any, that the Indictment will confuse the jury and the April 2012 event (Event No. 1(b)) is highly probative of the charged conspiracy, the Court will deny Defendant Hodge's motion to exclude evidence of Event No. 1(b).

---

[12] At the May 10 status conference, Defendant Hodge also argued that evidence of Event No. 1(b) should be excluded as improper prior bad act evidence under Rule 404(b). However, assuming the introduction of evidence of the nature that the Government has proffered, the evidence regarding Event No. 1(b) is intrinsic to the charged offense of conspiracy to possess cocaine with intent to distribute, and thus is not subject to the requirements of Rule 404(b). Specifically, given Defendant Quinones-Davila's alleged admission that he was traveling with another individual to St. Thomas where "they" were going to use the money to purchase cocaine, Event No. 1(b) "directly proves the charged offense" and would "facilitate the commission of the charged crime." *Green*, 617 F.3d at 249. The Government's proffered evidence that "Defendant is the 'boss' in a drug trafficking organization, has given money to individuals to pay costs associated with mid-sea drug retrievals," (Dkt. No. 810 at 5) also supports the intrinsic nature of Event No. 1(b).

## IV.    CONCLUSION

For the forgoing reasons, Defendant Quinones-Davila's Motion to Exclude Event No. 4 and All Evidence Related to the Traffic Stop Described in Event No. 4 (Dkt. No. 788) as well as Defendant Hodge's Motion to Exclude Event No. 1(b) will both be denied. As to Defendant Quinones-Davila's Motion to Exclude, the portion of the Motion arguing that the evidence was obtained in violation of his constitutional rights—which the Court deems to be a motion to suppress—will be denied as untimely. The portion of the Motion seeking to exclude evidence of Event No. 4 because it does not bear a sufficient nexus to the charged conspiracy offense is denied subject to the admission of evidence of the nature that the Government has proffered in support of its position.

Likewise, Defendant Hodge's Motion to Exclude Event No. 1(b) because it is misleading and bears no sufficient nexus to the charged conspiracy offense is denied subject to the admission of the evidence of the nature the Government has proffered in support of its position.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 22, 2017                                   _____/s/_____
                                                     WILMA A. LEWIS
                                                     Chief Judge