# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 2016-0009 |
| ) | |
| JOSE HODGE, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Renee Dowling, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Jose Hodge's "Motion for Revocation of Detention Order," pursuant to 18 U.S.C. § 3145(b) and the Due Process Clause of the Fifth Amendment. (Dkt. No. 1123). For the reasons discussed below, the Court will deny Defendant's Motion.

### I. BACKGROUND

This case began with a Complaint filed on November 16, 2015 against Defendant Jose Hodge ("Defendant" or "Hodge") and three other Defendants charging conspiracy to possess a controlled substance with intent to distribute and possession of cocaine powder with intent to distribute. (Dkt. No. 1 in 2015-mj-0029). Hodge, who had been arrested on November 14, 2015, appeared for an advice of rights hearing on November 16, 2015.

On November 18, 2015, the Government filed a Motion to Detain Hodge and the three other Defendants named in the Complaint. (Dkt. No. 16). Hodge filed a Motion for Pre-Trial

Release. (Dkt. No. 21). A detention hearing took place on November 19 and 24, 2015 before Magistrate Judge George W. Cannon, Jr. (Dkt. No. 20). Hodge presented the testimony of Yarin Boulogne and Ramona Donato, his first cousin and aunt, respectively, who testified concerning "Hodge's family ties to the community, his employment history, the length of time he had resided [on St. Croix], and the fact that he was engaged to be married on St. Croix." (Dkt. No. 1123 in 2016-cr-0009).

On November 24, 2015, Judge Cannon issued an Order of Detention. (Dkt. No. 25 in 2015-mj-0029). In that Order, Judge Cannon found probable cause to believe Hodge committed an offense for which a maximum term of imprisonment of ten years or more was prescribed in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*; that Hodge had not rebutted the presumption that no condition would reasonably assure his appearance and the safety of the community; and that due to the nature of the charges, the apparent strength of the Government's case, Hodge's lack of stable employment, and the risk of flight, there was no condition or combination of conditions that could be imposed which would reasonably assure his appearance and/or the safety of the community. *Id.*[1]

On December 8, 2015, a separate Complaint in this matter was filed against six other Defendants (not named in the November 2015 Complaint), charging conspiracy to possess a controlled substance with intent to distribute. (Dkt. No. 1 in 2015-mj-0031). On December 29, 2015, the Government filed an Information charging Hodge and nine co-Defendants with

---

[1] Hodge appealed the Order of Detention on November 30, 2015. (Dkt. No. 31). Because the Notice of Appeal did not comply with the Local Rules, the Court gave Hodge until December 21, 2015 to refile his appeal. (Dkt. No. 32). Hodge also filed a Motion to Dismiss Complaint (Dkt. No. 37) which was denied on January 22, 2016. (Dkt. Nos. 47, 48). Also on January 22, 2016, the Court dismissed Hodge's appeal, nunc pro tunc, effective December 22, 2015. (Dkt. No. 46).

2

conspiracy, as well as possession of a controlled substance with intent to distribute. (Dkt. No. 43 in 2015-cr-0042).

On May 10, 2016, Hodge and eleven co-Defendants were charged by Indictment, *inter alia*, with Conspiracy to Possess a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkt. No. 1 in 2016-cr-0009). Hodge and various other co-Defendants were also charged with attempted possession of cocaine with intent to distribute; possession of cocaine with intent to distribute; and bulk cash smuggling. *Id*. A Superseding Indictment was filed on August 23, 2016, charging Hodge and fourteen co-Defendants with conspiracy to possess a controlled substance with intent to distribute (Count 1). (Dkt. No. 190). Hodge and various other co-Defendants were also charged with the related crimes of attempted possession (Counts 3 and 5) and possession of cocaine (Count 7). *Id.* In addition, Hodge and another Defendant were charged with bulk cash smuggling (Count 2).

In May 2016, the Government filed a motion to extend discovery deadlines by a month (Dkt. No. 81), and Defendants filed numerous motions, including motions challenging detention (Dkt. Nos. 18, 23, 57, 64, 95, 131) and motions to suppress evidence (Dkt. Nos. 17, 180, 219, 220, 222, 347, 374). One Defendant was arraigned in mid-September 2016 (Dkt. No. 260), and filed a motion to continue the trial, which had been set for October 31, 2016. (Dkt. No. 296). The motion to continue was granted. (Dkt. No. 299). At calendar call in October 2016, due to numerous pending motions and in consultation with the parties, the Magistrate Judge set the trial date for April 2017. (Dkt. No. 377). In early April 2017, trial was continued for one week, from April 25 to May 2, 2017, at the Government's request. (Dkt. No. 636).[2] A final Defendant was arraigned on

---

[2] The Magistrate Judge found that a continuance of the trial date may facilitate plea negotiations with the remaining Defendants and a continuance would allow the resolution of pending pretrial motions that may impact trial. (Dkt. No. 636). The Magistrate Judge also accepted the Government's representation that five of the Defendants had no objection to the continuance, and

April 17, 2017. (Dkt. No. 682). That Defendant moved to sever his case, which the Court granted on April 24, 2017. (Dkt. No. 718).

The trial of six Defendants commenced on May 2, 2017 with jury selection, which lasted through May 4, 2017. All counsel agreed on a break from trial on Friday, May 5, 2017, as well as another break from trial the next week, May 8-12, 2017, to allow one of the defense counsel to attend a personal engagement. Trial was scheduled to resume on Monday, May 15, 2017 with opening statements. However, on that morning, the Government produced an extensive amount of discovery. The Government gave its opening statement on May 15th, but the Court delayed opening statements of the Defendants for a week in order to provide them with the opportunity to review and process the late discovery. Defense opening statements took place on Monday, May 22, 2017, and the trial concluded with a hung jury on July 7, 2017.

On September 1, 2017, the Court issued an Amended Trial Management Order which scheduled the retrial of this matter for January 18, 2018. (Dkt. No. 1105).

As a result of the extensive damage and destruction caused by Hurricane Maria on September 19-20, 2017, the St. Croix Courthouse was closed. The Court issued two General Orders continuing, *inter alia*, all criminal matters on St. Croix until November 27, 2017, and excluding the time from September 5, 2017 through November 27, 2017 under the Speedy Trial Act, pursuant to 18 U.S.C. § 3161(h)(7)(A). (Misc. Case No. 17-0011, Dkt. Nos. 1, 3). On October 25, 2017, the Government filed a "Motion to Extend TMO Deadlines" wherein it requested a three-week extension of all deadlines for November and December 2017 contained in the Court's

---

the one Defendant who objected did so on the ground that counsel was scheduled for trial in another matter, but the trial in that other case had been continued. *Id.*

Amended Trial Management Order issued on September 1, 2017. (Dkt. No. 1112 in 2016-cr-0009). All defense counsel concurred in the request. *Id.*[3]

On November 2, 2017, Defendant Sergio Quinones-Davila filed a Motion to Continue Jury Selection and Trial Date, explaining that he had a number of pending requests to the Court that had been delayed due to the hurricane; and that he would need time to review the transcript from the first trial and to prepare witness examinations and motions in limine prior to the second trial. (Dkt. No. 1117). As a result, he stated that the remaining time before the January 18, 2018 retrial was "no longer realistic to retry this complicated, multi-defendant matter." *Id.* at 2. He asked that a new date be determined at the next calendar call. *Id.* Quinones-Davila's Motion to Continue was granted. (Dkt. No. 1119). After meeting with counsel at calendar call on November 15, 2017, Magistrate Judge Cannon scheduled the retrial for April 16, 2018. (Dkt. No. 1131).

On November 8, 2017, Hodge filed the instant "Motion for Revocation of Detention Order" in which he observed, *inter alia*, that he has been continuously detained for two years, and could be detained for several additional months pending the retrial. (Dkt. No. 1123). Hodge also sought an "evidentiary hearing to present facts relevant to the instant motion." *Id.* The Government did not file a Response.[4] The Court has determined that the written record is a sufficient basis upon which to render its ruling and therefore a hearing is unnecessary. Based on that record, Defendant's Motion for Revocation of Detention Order, including the request for an evidentiary hearing, will be denied.[5]

---

[3] The Government noted that it was unable to reach one of the defense counsel but, based on a prior in-person conversation with him, the Government did not anticipate that any counsel would object to the motion. (Dkt. No. 1112). No objection was, in fact, lodged.

[4] The instant Motion is similar to one filed by Hodge's co-Defendant, Sergio Quinones-Davila (Dkt. No. 1070), to which the Government filed an Opposition (Dkt. No. 1090).

[5] The Government filed a Second Superseding Indictment on February 21, 2018. (Dkt. No. 1216). That filing does not affect the analysis herein.

## II. DISCUSSION

### A. Hodge's Arguments

In the instant Motion, Defendant has incorporated "in whole and in part by permission" the analysis set forth in the "Motion for Revocation of Detention Order" (Dkt. No. 1070) filed by Defendant Sergio Quinones-Davila. (Dkt. No. 1123 at 3, n.1). In so doing, Hodge argues for revocation of his Detention Order "pursuant to 18 U.S.C. § 3145(b) and the Due Process Clause of the Fifth Amendment." (Dkt. No. 1123 at 1). Like Quinones-Davila, the basis for Hodge's motion is the alleged violation of his due process rights that have resulted from his continued detention, and he presents the same legal arguments.[6]

The Court denied Quinones-Davila's "Motion for Revocation of Detention Order" on February 10, 2018. (Dkt. Nos. 1191, 1192). Because Quinones-Davila's and Hodge's motions are very similar, the Court will incorporate its Memorandum Opinion denying Quinones-Davila's Motion as applicable to Defendant Hodge.

---

[6] Title 18 of the U.S. Code, Section 3145(b), provides that if a person is ordered detained by a magistrate judge, that person may file a motion for revocation or amendment of the detention order. Hodge cites 18 U.S.C. § 3145(b) and mentions revocation of detention in passing as the statutory authority for his relief. He also notes that the district court exercises *de novo* review over a magistrate judge's detention order. However, the entirety of Defendant's argument focuses on how his continued detention violates his due process rights. He applies a due process standard, rather than arguing that, under a *de novo* review, the Magistrate Judge erred in his detention determination. *See United States v. Hofstetter*, 2017 WL 4079181, at *5 (E.D. Tenn. Sept. 14, 2017) (agreeing with defendant that "a due process violation provides a constitutional basis for the Court to reconsider its detention order that is separate from the question of whether a detention hearing may be reopened under the Bail Reform Act."). Defendant's due process approach is underscored by the fact that he did not provide a transcript of the detention hearing, as required by LRCi 72.2(a) governing review of a magistrate judge's order. The Court will therefore evaluate Hodge's arguments under the due process standard which, in any event, incorporates some of the elements a court assesses when considering a statutory motion for revocation of a detention order—such as the seriousness of the charges; whether the defendant presents a risk of flight or danger to the community; and the strength of the case against the defendant. *See United States v. Accetturo,* 783 F.2d 382, 388 (3d Cir. 1988).

Using a standard for due process challenges to continued detention culled from *United States v. Cos*, 2006 WL 4061168 (D.N.M. Nov. 15, 2006) and *United States v. Ailemen*, 165 F.R.D. 571 (N.D. Cal. 1996), Hodge argues that the two year detention from the point of his arrest to the filing of the instant Motion, plus the number of additional months that will pass before the retrial, weigh in favor of finding a due process violation warranting his release; the Government bears some responsibility for the length of the pretrial delay, which also weighs in Defendant's favor; and there is no evidence that Hodge is a danger to the community or presents a risk of flight. (Dkt. No. 1123). As a result, Hodge contends that stringent conditions of release, such as home confinement, use of third-party custodians, and bail should strike an appropriate balance between Defendant's liberty interests and the Government's interests in protecting society and ensuring that he appears for trial. *Id.* at 9.

**B. Due Process Detention Standard**

The Due Process Clause of the Fifth Amendment of the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. Congress has made the Fifth Amendment applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561.

The Supreme Court has concluded that the Government may detain a defendant prior to trial consistent with the Due Process Clause as long as that confinement does not amount to "punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court explored due process concerns related to pretrial detention. The Court noted that it had "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest," *id.* at 748, which "may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." *Id.* at 750-51. The Court observed that "the mere

7

fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment," *Id*. at 746, and further referenced Congress' finding that persons arrested for extremely serious offenses "are far more likely to be responsible for dangerous acts in the community after arrest." *Id.* at 750. The Court in *Salerno*, however, "intimate[d] no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal [set forth in the Bail Reform Act]." *Id*. at 747 n.4.

In *United States v. Accetturo*, 783 F.2d 382 (3d Cir. 1988), the Third Circuit generally described factors a court should consider when assessing whether a defendant's due process rights require the defendant to be released from pretrial detention. The Court opined:

> Thus, a determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds. Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial. Instead, we believe that due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as [1] the seriousness of the charges, [2] the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and [3] the strength of the government's case on the merits. Moreover, these judgments should reflect such additional factors as [4] the length of the detention that has in fact occurred, [5] the complexity of the case, and [6] whether the strategy of one side or the other has added needlessly to that complexity.

*Accetturo,* 783 F.2d at 388.

In his brief, Hodge applied the factors enunciated in *Cos* (Dkt. No. 1123 at 5)[7] and those enunciated in *Ailemen* in arguing that his continued detention violated his due process rights. *Id.*[8]

---

[7] The factors set forth in *Cos* are: "(i) the length of confinement and any non-speculative expected confinement; (ii) the government's responsibility for delays in the proceedings; and (iii) the strength of evidence supporting detention." *Cos*, 2006 WL 4061168, at *3 (citing *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993)).

[8] The factors set forth in *Ailemen* are: "(1) protecting the integrity of the trial process (by, for example, preventing a defendant from attempting to intimidate witnesses, jurors, or others

8

While the factors in *Cos, Ailemen*, and *Accetturo* overlap to some extent, the Court will apply the governing law in the Third Circuit, as articulated in *Accetturo*.

C. **Analysis**

1. **Seriousness of the Charges**

Hodge is charged in the Superseding Indictment with Conspiracy to Possess a Controlled Substance with Intent to Distribute; Attempted Possession of Cocaine with Intent to Distribute; and Possession of Cocaine with Intent to Distribute. (Dkt. No. 190).[9] Each of these charges carries a statutory ten-year minimum sentence, with a maximum term of life imprisonment. Moreover, the alleged drug trafficking organization of which Hodge was allegedly a member, was involved in the importation or attempted importation of at least 273 kilograms of cocaine from August 2014 through November 2015. The Court finds that these charges are serious and, consequently, this *Accetturo* factor weighs against this Court finding a due process violation in Hodge's continued detention. *See United States v. Berry*, 2009 WL 3254449, at *6 (D.V.I. Oct. 9, 2009) (finding that conspiracy to possess crack cocaine and cocaine powder with intent to distribute, and possession of crack cocaine and cocaine powder with intent to distribute, constituted "serious charges" under *Accetturo*).

2. **Strength of Government's Proof Concerning Risk of Flight and Danger to the Community**

The *Accetturo* factor—the strength of the Government's proof concerning risk of flight and danger to the community—echoes the factors the Magistrate Judge considered pursuant to 18

---

involved in the prosecution), (2) preventing danger to the community, and (3) assuring that the defendant is present for trial and, if convicted, for sentencing (the risk of flight factor)." *Ailemen,* 165 F.R.D. at 595-96.

[9] In the prior trial, judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, was entered on the Bulk Cash Smuggling Count with which Hodge and another co-Defendant were charged.

9

U.S.C. § 3142(g) when ordering Hodge detained in the first instance. In justifying detention, Magistrate Judge Cannon found that no condition or combination of conditions would reasonably assure Hodge's appearance and the safety of the community, given the apparent strength of the evidence, the nature of the charges, the risk of flight presented, and the lack of stable employment. (Dkt. No. 25 in 2015-mj-0029).

In the Detention Order, the Magistrate Judge found probable cause to believe that Hodge committed an offense for which a maximum prison term of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801. This finding indicates that the drug conspiracy charge triggered the rebuttable presumption that no condition or combination of conditions would reasonably assure Hodge's appearance and the safety of the community under 18 U.S.C. § 3142(e)(3)(A). *See, e.g., United States v. Williams*, 903 F. Supp. 2d 292, 294 (M.D. Pa. 2012). Once that presumption arises, "the burden shifts to [the defendant] to produce some credible evidence that he will appear and will not present a threat to the community." *United States v. Oliver*, 2016 WL 1746853, at *5 (W.D. Pa. May 3, 2016) (citing *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)). Hodge did not rebut the presumption at the hearing before the Magistrate Judge, nor does he do so now.

At this juncture, the Court has the benefit of evaluating Hodge's current arguments against the backdrop of an extensive trial record. In the instant Motion, Hodge analyzes the analogous factor articulated in *Ailemen*, 165 F.R.D. at 595-96 (*see supra,* n.8). He argues that

> there is no evidence Jose R. Hodge threatened witnesses, jurors or even has any propensity to violence. In fact, Hodge's family has stood by him throughout this case with his mother, cousins, and uncle attending, as they were able, the nine (9) week trial. Additionally, Jose R. Hodge has a family member who is willing to use real property which he owns as security for his bail. Stringent conditions of release, such as home confinement, third-party custodians, and bail guaranteed by people close to Jose R. Hodge should strike an appropriate balance between Hodge's liberty interests and the Government's regulatory interests.

(Dkt. No. 1123 at 9). This was the extent of Defendant's argument concerning both dangerousness to the community and risk of flight. *Id.*

The assertion that Hodge's family has stood by him throughout the case and attended trial when they were able does not shed any light on his possible dangerousness to the community, and Hodge provides no authority as to why this assertion should be relevant in the Court's assessment in the context of a possible due process challenge to his continued detention. In addition, the assertion that there is no evidence that Hodge threatened witnesses or jurors, or has a "propensity to violence" is not, by itself, dispositive of the danger to the community inquiry. In *United States v. Strong,* 775 F.2d 504 (3d Cir. 1985), the Third Circuit found that the statutory language and legislative history of § 3142(b)[10] "unequivocally establishe[d] that Congress intended to equate traffic in drugs with a danger to the community." *Id.* at 506; *see id.* at 507 (opining that the statute made an "explicit equation of a drug offense with danger to the safety of the community for purposes of release or detention of a defendant pending trial[.]"); *United States v. Perry,* 788 F.2d 100, 109, 113 (3d Cir. 1986) (considering pretrial detention imposed for the "safety of the community" to be essentially civil commitment, and holding that substantive due process is not violated by detaining "persons found to be dangerous in a very real sense" including "distributors of dangerous drugs"); *United States v. Morales*, 2011 WL 3651355, at *3 (E.D. Tex. Aug. 19, 2011) ("The very nature of drug offenses constitutes a danger to the community which may justify pretrial detention"); *Ailemen*, 165 F.R.D. at 596 ("We begin with a clear recognition that trafficking in illegal narcotics [including cocaine] . . . without more, causes serious harm to society. A drug trafficker is, by legal definition, a danger to the community."). For purposes of assessing

---

[10] 18 U.S.C. § 3142(b) provides that a judicial officer shall order the pretrial release of a person on personal recognizance or upon execution of an appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."

11

the danger to the community factor, Hodge's argument that he has no propensity for violence and that his family has stood by him through trial does not overcome the equating of drug trafficking with danger to the community.

With regard to the risk of flight prong, similar to the argument that the Government made in response to Quinones-Davila's Motion for Revocation of Detention Order, Hodge is associated with boat captains and thus presents a risk that he could utilize their services to relocate to foreign countries if released. The Court finds this to be a compelling consideration when assessing the *Accetturo* risk of flight factor and the evidence presented at trial, as these alleged contacts provide a relatively easy and hard to detect means to flee—not only from the Virgin Islands but from the continental United States as well.

Further, Hodge poses a risk of flight because of the serious nature of the offenses with which he is charged and the severity of the penalties he faces if convicted. He faces a mandatory minimum sentence of ten years and a maximum of life if convicted of the conspiracy and possession with intent to distribute cocaine charges pursuant to 21 U.S.C. § 841(b)(1)(A)(ii). *See United States v. Wrensford*, 2012 WL 6028628, at *7 (D.V.I. Dec. 4, 2012) (finding risk of flight due to serious nature of offenses charged and severity of penalties if convicted); *United States v. Thomas*, 2009 WL 2996532, at *3 (D.V.I. Sept. 16, 2009) ("Although [the] [d]efendants have ties to the jurisdiction and have offered third-party custodians, the Court takes into consideration the fact that [the] [d]efendants face a significant period of incarceration if convicted. Community ties and third party custody is not sufficient to assure [the] [d]efendants' appearance for trial. . . .") (citing cases); *United States v. Stein*, 2005 WL 3071272, at *7 (S.D.N.Y. Nov. 15, 2005) ("[T]he defendant has a substantial motive to flee given the severity of the sentence he may face in the event of conviction."); *United States v. Caraballo*, 47 F. Supp. 2d 190, 192 (D.P.R. 1999) (noting

that "defendant is a 'risk of flight' because defendant potentially faces a life sentence and the risk of flight increases as the severity of [the] potential sentence increases").

These considerations, together with the evidence presented at trial as to Hodge's alleged coordination of the activities of the alleged drug trafficking organization in the Virgin Islands, convince the Court that Hodge's proffered home confinement, third-party custodians, and bail are insufficient to reasonably assure his appearance at trial.

In view of the foregoing, the Court finds that the danger to the community and risk of flight *Accetturo* factors weigh against the Court finding a due process violation in Hodge's continued detention.

### 3. Strength of the Government's Case on the Merits

Based on the evidence presented at trial, the Court finds that the strength of the Government's case on the merits weighs against a due process violation. The confidential source, Timothy Schoenbohm, testified, *inter alia*, that Hodge arranged to use Schoenbohm's boat for a mid-sea retrieval of thirty-five kilograms of cocaine in August 2014. Hodge and Schoenbohm brought the cocaine to Shoenbohm's apartment. Schoenbohm further testified that in October 2014, he discussed another cocaine retrieval with Hodge. Other co-Defendants arrived on St. Croix and traveled with Schoenbohm on his boat. They retrieved seventy-one kilograms of cocaine which they brought to Hodge's house. Some of the drugs were for Quinones-Davila and some were for Hodge. Schoenbohm also testified that, in early November 2014, Hodge contacted him about a job. He and Hodge traveled on Schoenbohm's boat but their attempt to retrieve eighty kilograms of cocaine at sea was unsuccessful. In November 2015, Hodge was apprehended with other co-Defendants at night on a beach in close proximity to four suitcases filled with eighty-seven kilograms of cocaine. With regard to this last job, Hodge allegedly admitted to law enforcement that he expected to be paid to be a "look out" and he knew drugs were coming. In

13

addition to Schoenbaum's testimony, the Government introduced audio recordings of conversations allegedly between Schoenbaum and Hodge regarding various details of the drug transactions.

In view of the foregoing, the Court concludes that the Government presented substantial evidence of Hodge as an organizer of, and participant in, cocaine retrievals or attempted retrievals in August 2014, October 2014, November 2014, and November 2015. Accordingly, the strength of the Government's case factor weighs in favor of continued detention.

### 4. The Length of Detention

Hodge has been incarcerated since November 14, 2015. Thus, he was detained for over seventeen months prior to the first trial, which began on May 2, 2017, and will have been detained for twenty-nine months by the time the retrial begins in April 2018.

In *United States v. Orena*, 986 F.2d 628 (2d Cir. 1993), the Second Circuit observed that "the length of a detention period will rarely by itself offend due process." *Id*. at 631; *see also Millan*, 4 F.3d at 1044 ("A prospective detention period of the length at issue here [twenty-four months] while weighing in favor of release, does not, standing alone, establish that pretrial confinement has exceeded constitutional limits."). After consideration of the relevant factors under the circumstances presented, courts have found pretrial detention periods as long as forty-one months, *United States v. Casas*, 425 F.3d 23, 34 (1st Cir. 2005), thirty to thirty-three months, *United States v. El-Hage,* 213 F.3d 74, 79 (2d Cir. 2000), and thirty-two months, *United States v. Melendez-Carrion,* 820 F.2d 56, 60-61 (2d Cir. 1987), to be constitutional.

While the Court considers Hodge's twenty-nine month detention period until the start of the retrial as weighing in favor of release, the Court does not find that the length of that detention, by itself, offends due process. This is particularly so when this factor is considered in conjunction

with the next two *Accetturo* factors—the complexity of the case and whether one side added needlessly to that complexity—both of which shed some light on the reasons for the delay.

   5. **Complexity of the Case**

On November 16, 2015, Hodge and three other co-Defendants were charged in a two-count Complaint with conspiracy to possess a controlled substance with intent to distribute and possession of cocaine powder with intent to distribute. (Dkt. No. 1 in 2015-mj-0029). The case grew in terms of number of Defendants and charges. On December 29, 2015, the Government filed an Information, charging Hodge and nine co-Defendants with conspiracy and possession with intent to distribute cocaine. (Dkt. No. 43 in 2015-cr-0042). In the seven-count Indictment alleging nine separate overt acts, filed on May 10, 2016, the Government charged Hodge and eleven co-Defendants with conspiracy, and further charged Defendant and/or various of the other eleven co-Defendants with possession and attempted possession with intent to distribute cocaine. (Dkt. No. 1 in 2016-cr-0009). Hodge and another Defendant were also charged with bulk cash smuggling. Finally, in the seven-count Superseding Indictment, filed in August 2016, the Government charged Hodge and/or various of the other fourteen co-Defendants with the same charges and overt acts. (Dkt. No. 190).

During the course of the case, Defendants filed numerous pretrial motions, including motions challenging detention (Dkt. Nos. 23, 57, 64, 95); motions to suppress (Dkt. Nos. 17, 180, 219, 220, 222, 347, 374); motions to compel (Dkt. Nos. 31, 32, 218, 221, 779); motions to reconsider detention (Dkt. Nos. 18, 23); motions to release Defendants from detention or stay detention hearings (Dkt. Nos. 57, 64, 96); motions to sever (Dkt. Nos. 459, 711); a motion to change venue (Dkt. No. 236); and a motion to dismiss (Dkt. No. 240). These motions necessitated evidentiary and other hearings and required the issuance of a number of Memorandum Opinions (*see, e.g.*, Dkt. Nos. 104, 107 in 2015-cr-0042; Dkt. Nos. 259, 434, 507, 880, 883 in 2016-cr-0009),

Orders, and oral rulings before trial could proceed. Also during the course of the case, some Defendants were taking pleas and being sentenced even as one Defendant (who went to trial) was arraigned as late as mid-September 2016 (Dkt. No. 261) and another, who moved to sever, was arraigned on April 17, 2017. (Dkt. No. 711).[11] Six Defendants proceeded to trial in May 2017. The Government produced approximately 40 audio recordings and over 1,000 pages of discovery.

All of these facts have contributed to the complexity of this case. *See Berry*, 2009 WL 3254449, at *8 (considering multi-defendant case with voluminous discovery as inherently complex); *cf. United States v. Bryant*, 2006 WL 482430, at *1 (W.D. Va. Feb. 27, 2006) (noting "unusual complexity of the case" involving twenty co-defendants). Co-Defendant Quinones-Davila characterized this case as a "complicated, multi-defendant matter" in his Motion to Continue the January 18, 2018 trial date. (Dkt. No. 1117 at 2). Given this backdrop, the Court finds that this *Accetturo* factor weighs against a due process violation.

### 6. Whether One Side Added Needlessly to the Complexity

The final *Accetturo* factor is "whether the strategy of one side or the other added needlessly to the complexity of the case." *Accetturo*, 783 F.2d at 388. Case law in the Third Circuit follows *Accetturo*, in assessing the actions of both parties to determine if either party bears responsibility for "needless[ ]" delay in going to trial. *See United States v. Harris,* 2011 WL 1660573, at *6 (W.D. Pa. May 3, 2011), *Berry*, 2009 WL 3254449, at *8-9.[12]

---

[11] In addition, one Defendant remains at large. (Dkt. No. 1140).

[12] Some cases outside this Circuit focus on whether the delay of the trial is attributable to the Government. *See, e.g., Millan*, 4 F.3d at 1043 and *United States v. Gonzalez-Claudio*, 806 F.2d 334, 341 (2d Cir. 1986). Hodge posits that "[s]o long as the Government has some responsibility for a portion of the delay" resulting from his pretrial detention, this factor weighs in his favor. (Dkt. No. 1123 at 7). However, the case law he cites for this proposition, *Gonzalez-Claudio*, provides that the Government must bear "*significant* responsibility for the duration of [pretrial] detention," 806 F.2d at 341, and that "[i]t suffices for present purposes to conclude that the Government, even if not deserving of blame, bears a responsibility for a portion of the delay *significant enough* to add considerable weight to the defendants' claim that the duration of

16

Hodge argues that "the Government's untimely discovery disclosures [have] caused considerable delay in this case up to and including the week-long break during the second week of trial." (Dkt. No. 1123 at 8). He also points to the re-indictment of the case, "which resulted in the filing of a new case [and] caused the continuance of the previously scheduled trial." *Id.*

The Government was responsible for a six-day delay in proffering the first round of discovery (due January 21, 2016 and served January 27, 2016) and it moved in May 2016 to extend the discovery deadline for a month (Dkt. No. 81). The Government's chronic delay in producing discovery was also responsible for a one-week delay in beginning trial testimony. Although the Court does not sanction any of the delays occasioned by the Government, the Court cannot conclude that the particular instances cited by Hodge tip this *Accetturo* factor in favor of finding a due process violation.

As the Court outlined above in describing the complexity of the case, most of the time that elapsed prior to the first trial was devoted to the resolution of numerous motions during the course of the litigation. In addition, the case began with four Defendants and two counts, and expanded to fifteen Defendants and seven counts, where Defendants were at different stages of progress in their cases. For example, at the time that Defendant Hodge filed a Motion to Suppress in August 2016 (Dkt. No. 180), the arrest warrants for Defendants Felix Melendez-Colon and Omy Gutierrez-Calderon (Dkt. Nos. 191, 192) had not yet been issued. Gutierrez-Calderon was arraigned in September 2016 and Melendez-Colon was arraigned in April 2017. Due to the September 2016 entry into the case of Gutierrez-Calderon, his counsel moved to continue the October 2016 trial (Dkt. No. 296), which was then rescheduled from October 31, 2016 to April 2017. (Dkt. Nos. 299, 377). Following the mistrial, Quinones-Davila's counsel filed the last motion

---

detention has exceeded constitutional limits." *Id.* at 342-43 (emphasis added). *Accetturo* does not frame this element in the same way. Once again, the Court will follow the precedent established in *Accetturo* in examining this factor.

to continue the trial of this "complicated multi-defendant matter" (Dkt. No. 1117 at 2) from its previously-scheduled January 2018 date (Dkt. No. 1118), and the trial was moved three months to April 2018. The anticipated length of the trial—which the parties estimate to last from six weeks (Dkt. No. 1113) to eight to ten weeks (Dkt. No. 1120)—also creates challenges in attempting to schedule it on the Court's calendar.

Hodge faults the Government for re-indicting the case in May 2016 which, he claims, caused the continuance of the June 2016 trial. (Dkt. No. 1123 at 8). Similar to the conclusion reached by the District Court in *United States v. Bryant*, this Court "can make no finding that the Government's 'responsibility' for the time between indictments evinces a punitive intent, because there is no evidence of record that the Government could or should have delayed filing the initial indictment or obtained the superseding indictment sooner." *United States v. Bryant*, 2006 WL 482430, at *5 (W.D. Va. Feb. 27, 2006). Moreover, the record does not show that the May 2016 filing of the Indictment "caus[ed] the continuance of the previously scheduled trial dates," as asserted by Hodge, since between May and June, 2016, counsel for the new Defendants was being appointed, and Defendants were, *inter alia*, seeking discovery, engaged in detention hearings, and seeking reconsideration of detention orders.

Finally, the Court notes that the mistrial was "wholly beyond the control of the parties or the Court." *See Bryant*, 2006 WL 482430, at *5. Thereafter, co-Defendant Quinones-Davila filed a motion to continue the retrial from its January 2018 date, stating that he needed additional time to file pretrial motions. (Dkt. No. 1117). Thus, responsibility for the time from January 2018 to the rescheduled April 2018 trial date does not lie with the Government.

In sum, this *Accetturo* factor also weighs against the Court finding that Hodge's continued detention violates due process.

### D. Hearing

In view of the briefing provided and the abundance of record evidence, the Court finds that a hearing is not necessary to resolve the Motion for Revocation of the Detention Order. Accordingly, Hodge's request for a hearing will be denied.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the *Accetturo* factors weigh in favor of finding that Hodge's continued detention does not violate his due process rights. Accordingly, the Court will deny Hodge's Motion for Revocation of the Detention Order. (Dkt. No. 1123). The Court also finds that a hearing is not necessary to resolve the Motion and therefore Hodge's request for a hearing will also be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 23, 2018  _____/s/_____  
WILMA A. LEWIS  
Chief Judge