# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>v. )<br>) **Criminal Action No. 2016-0009**<br>**JOSE R. HODGE, et al.,** )<br>)<br>**Defendants.** )<br>_____) | |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**Renee D. Dowling, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jose R. Hodge*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Jose R. Hodge's ("Hodge") Motion for Sanctions ("Motion") and Memorandum of Law in Support ("Memorandum") (Dkt. Nos. 1463, 1464), and the Government's Opposition to Hodge's Motion ("Opposition") (Dkt. No. 1472). In his Motion, Hodge requests that the Court grant a continuance of trial or, in the alternative, dismiss the indictment against him pursuant to Federal Rule of Criminal Procedure 16 in light of the Government's "failure to comply with the rules of discovery and inspection, and to adhere to the Orders of this Court." (Dkt. No. 1463 at 1). For the reasons that follow, the Court will deny Hodge's Motion.

### I.  BACKGROUND

In this multi-defendant drug trafficking case, Hodge is charged with five counts in a six-count Second Superseding Indictment ("Indictment") filed on February 21, 2018: one count of conspiracy

to possess a controlled substance with intent to distribute, three counts of attempted possession of cocaine with intent to distribute, and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 846. (Dkt. No. 1216). The Indictment alleges that "[f]rom on or about January 2014 until on or about March 2016," Hodge and others "did conspire and agree with one another . . . to knowingly and intentionally possess, with intent to distribute, more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride (cocaine powder) . . . and a detectible amount of marijuana . . . ." *Id.* at 3. The Indictment further alleges that during the conspiracy, some of the Defendants traveled by boat south of St. Croix to effect the mid-sea retrieval of cocaine, which was then brought back to St. Croix and transshipped to Puerto Rico. *Id.* at 4.

A first trial in this matter resulted in a mistrial in July 2017. A second trial began on April 30, 2018. On May 15, 2018, Government witness Brian Gaumond—a Special Agent ("SA") with the Drug Enforcement Administration ("DEA")—testified during cross-examination that part of the basis for DEA's decision to provide confidential informant Timothy Schoehnbohm with funding for his relocation from St. Croix to Florida was a threat allegedly made against Schoenbohm by a defendant in this case.[1] SA Gaumond further testified that the alleged threat was made over the phone, and that Schoenbohm recorded the telephone conversation and provided DEA with the recording.

Following this testimony, counsel for all Defendants asserted that the Government had not produced the recording containing the alleged threat in discovery. The Government provided Defendants with a copy of the recording—which is labeled N-52—and confirmed after its review of discovery produced that it had no record of a prior production of the recording to Defendants. However, the Government noted that it had provided Defendants with a DEA-6 referencing the

---

[1] Although SA Gaumond did not identify which defendant allegedly made the threat, sidebar discussions among the parties and their later review of the recording at issue confirmed that Hodge is purportedly the defendant implicated in the incident.

existence of the recording in its prior disclosures.[2] Counsel for Hodge argued that the Government's failure to disclose the recording constituted a discovery violation and indicated that Hodge intended to seek relief as a result. The Court ordered Hodge and the Government to brief the issue of any relief to which Hodge may be entitled. (Dkt. No. 1459).

In his subsequent Memorandum, Hodge argues that he is entitled to a continuance of trial under Federal Rule of Criminal Procedure 16(d)(2)(B) as a result of the Government's untimely disclosure of the recording. (Dkt. No. 1464 at 2). In support of his request, Hodge notes the "overwhelming" volume of discovery in this case and asserts that, in light of the newly-disclosed recording, his counsel must "make a new perusal of the discovery to determine if any other material could be used in conjunction with the [recording] to mount a defense of entrapment," as the information revealed on the recording "seems to point to such." *Id.* Although Hodge does not specify the length of the "reasonable continuance" he requests, he maintains that a review of "the discovery in its entirety . . . would take days if not weeks to accomplish . . . ." *Id.* at 2-3. Hodge also argues, in the alternative, that an appropriate remedy for the Government's untimely production of the recording is the dismissal of all charges against him under Federal Rule of Criminal Procedure 16(d)(2)(D). *Id.* at 3. He contends that while "a continuance is feasible, it will disrupt the trial that is in progress to the possible detriment of the other defendants," and that in light of this potential disruption of trial the "just ruling under the circumstances" would be dismissal of the charges against him. *Id.* at 3-4.

In its Opposition, the Government concedes that it did not produce a copy of the recording in its pretrial discovery. (Dkt. No. 1472 at 1-2). However, it asserts that it submitted a DEA-6 to Defendants in May 2017 during the first trial of this matter which "identified N-52 [the recording]

---

[2] "DEA-6" is shorthand for a Drug Enforcement Administration Form 6—Report of Investigation.

and provided a summary of the audio's contents . . . ." *Id.* at 2.[3] The Government claims that it did not act in bad faith in neglecting to produce the recording, and argues that Hodge has failed to demonstrate that he has been prejudiced by the Government's untimely disclosure given that he was in possession of a summary of the contents of the recording as of May 2017. *Id.* at 3-4.

## II. DISCUSSION

### A. Applicable Legal Standards

Discovery obligations in a criminal case are set forth in Federal Rule of Criminal Procedure 16 ("Rule 16"). With respect to written or recorded statements, Rule 16 provides, in pertinent part, that "[u]pon a defendant's request, the government must disclose to the defendant, and make available for inspection . . . any relevant written or recorded statement by the defendant if the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists." FED. R. CRIM. P. 16(a)(1)(B). In the event of a party's failure to comply with a discovery request, Rule 16 authorizes a court "to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or . . . enter such other order as it deems just under the circumstances." *United States v. Lopez*, 271 F.3d 472, 483 (3d Cir. 2001) (quoting FED. R. CRIM. P. 16(d)(2)).

While a court may impose a wide variety of sanctions for a discovery violation, "these sanctions are discretionary; 'Rule[16] does not require a district court to do anything.'" *United States v. Jones*, 503 F. App'x 174, 178 (3d Cir. 2012) (quoting *Lopez*, 271 F.3d at 484). Where a court determines that the government has failed to comply with Rule 16, it must consider any harm caused by the violation and fashion a remedy that is adequate to provide a defendant with a fair trial—i.e.,

---

[3] The Government attached a copy of the DEA-6 to its Opposition as Exhibit 1. Because that copy was illegible, the Government subsequently filed another copy with the Court. (Dkt. No. 1474)

4

produce a "verdict worthy of confidence." *United States v. Lee*, 573 F.3d 155, 162 (3d Cir. 2009) (quoting *United States v. Mitchell,* 365 F.3d 215, 254 (3d Cir. 2004) (internal quotation omitted)). In fashioning an appropriate remedy, "a district court should consider the reasons for the party's delay in producing the materials, including whether it acted intentionally or in bad faith, and the degree of prejudice to the opposing party." *Id.* at 161. The court should attempt to "impose the least severe sanction that will accomplish prompt and full compliance" with the government's Rule 16 obligations. *Jacobs v. Gov't of Virgin Islands*, 53 F. App'x 651, 652 (3d Cir. 2002) (quoting *United States v. Ivy,* 83 F.3d 1266, 1280 (10th Cir. 1996)).

**B.     Analysis**

In the instant case, the Court concludes that the Government's failure to timely produce to Hodge the recording of the telephone conversation allegedly between Hodge and Schoenbohm constitutes a violation of Rule 16(a)(1)(B). The rule requires the Government to disclose and make available for inspection "any relevant written or recorded statement by the defendant if the statement is within the government's possession . . . and the attorney for the government knows . . . that the statement exists." FED. R. CRIM. P. 16(a)(1)(B). "Recordings of a defendant's telephone conversations contain statements within the meaning of this provision." *United States v. Pesaturo*, 519 F. Supp. 2d 177, 187 (D. Mass. 2007) (citing *United States v. Lanoue,* 71 F.3d 966, 973–74 (1st Cir. 1995)). The Government does not dispute that it was in custody of the recording and that its lead counsel was aware of the recording. Accordingly, the Government had an obligation to produce the recording to Hodge under Rule 16(a)(1)(B), and its failure to timely do so constitutes a discovery violation.

Nonetheless, the Court finds that Hodge's proposed remedies for the Rule 16 violation—a continuance of trial or the dismissal of the Indictment against him—are neither necessary nor appropriate under the circumstances. Hodge claims that a continuance of unspecified length is warranted here because his counsel must now review the entirety of the discovery disclosed in this

case to determine, in light of the newly-produced recording, whether any materials support a possible entrapment defense. Other than his vague assertion that the recording "seems to point to" the viability of an entrapment defense, however, Hodge provides no basis or support for his argument that the recording gives fodder to an entrapment defense.[4] Further, although Hodge did not receive a copy of the recording itself until May 15, 2018, the DEA-6 disclosed by the Government in May 2017 states, in relevant part:

> During the CS's conversation with HODGE, the CS inquired about the earlier threat made by HODGE. HODGE told the CS in sum and substance that the CS was saying things about him (HODGE) that wasn't [sic] true and that it was a threat to his (HODGE) family as well. HODGE told the CS that he considered him/her a friend but not anymore and that he did not want to be associated with the CS.

(Dkt. No. 1474-1 at 1).[5] To the extent that comments of this nature form the basis of Hodge's claim that the recording "seems to point to" the viability of an entrapment defense, the Court notes that Hodge's counsel has been in possession of the DEA-6 for approximately one year, and thus has had more than ample time to review the discovery through the prism of an entrapment defense. Accordingly, given the prior disclosure of the DEA-6 summarizing the contents of the recorded conversation, Hodge can show no prejudice resulting from the untimely disclosure of the recording itself. The Court therefore rejects Hodge's assertion that the Government's discovery violation has

---

[4] The Court does not intend to suggest that Hodge is under any obligation to reveal the details of his trial strategies in a filing on the public docket. However, in view of (1) Hodge's claim that his ability to mount a reasonable defense is prejudiced by the Government's untimely production, (2) his counsel's presumed familiarity with the discovery produced in this case, and (3) the Court's independent review of the recording at issue, the Court finds insufficient Hodge's bare-bones suggestion that the recording "seems to point to" an entrapment defense.

[5] In his Memorandum, Hodge acknowledges that he received the DEA-6 "on or about May 26, 2017." (Dkt. No. 1464 at 2). While he claims that the DEA-6 contains only a "vague mention of the recording," *id.*, the Court's independent review of the DEA-6 revealed that the entirety of the two-page document is dedicated to a discussion of the recording, including the above summary of the contents of the conversation; the context in which the recording was made; and the chain of custody while the recording was in DEA's possession.

"denied [him] the opportunity to develop a legal defense that is powerful and supported by the evidence." (Dkt. No. 1464 at 3).[6]

The Court is also perplexed by the claim that Hodge's counsel requires "a reasonable opportunity to review the discovery in its entirety" in order to make a determination as to whether any of the materials previously disclosed would support a defense of entrapment. The majority of the discovery materials disclosed in this case have been in the possession of Hodge's counsel for at least one year, as they were produced in connection with the first trial of this matter. Having reviewed those materials in preparation for the first trial, litigated the first trial to its conclusion, and then presumably reviewed the materials *again* in preparation for the second trial, Hodge's counsel should be intimately familiar with the discovery in this case. Even assuming that evidence of entrapment can be distilled from the discovery materials together with the recording, the Court is unconvinced— given Hodge's counsel's presumed familiarity with the discovery—that a continuance is necessary under the circumstances here. As such, the Court does not find that a continuance of "days if not weeks" to allow Hodge's counsel more time to review discovery is a necessary or appropriate remedy to ensure that Hodge is afforded a fair trial—particularly given his failure to demonstrate how the Government's untimely production has prejudiced his ability to mount an entrapment defense.[7]

---

[6] While the Court recognizes that is the Government's responsibility to produce discoverable materials, it remains unclear why Hodge did not request a copy of the recording from the Government based on a review of the summary of the conversation contained in the DEA-6, especially if he believes that the recording provides him with the foundation necessary to develop a possible entrapment defense. Hodge fails to explain this mystery.

[7] The Court further notes that the parties have estimated that this trial—which is currently entering its third week, excluding jury selection—will last approximately eight to nine weeks. The Government estimated that its case-in-chief will last approximately six weeks. The Government's case is therefore expected to continue for approximately four more weeks before any Defendant is called to put on his case. Considering her familiarity with the discovery in this case, this is more than sufficient time for Hodge's counsel to be able to identify any materials potentially relevant to an entrapment defense.

In addition to Hodge's failure to demonstrate that he faces prejudice as a result of the Government's untimely disclosure such that a continuance of trial is warranted here, the Court further observes that there is no evidence in the record indicating that the Government's Rule 16 violation was committed intentionally or in bad faith. Any notion that the Government may have intentionally withheld the recording is dispelled by its prior disclosure of the DEA-6, which alerted Hodge to the existence of the recording and summarized its contents. The Government's failure to produce the recording itself appears to be the result of oversight.[8]

In sum, in light of the absence of prejudice to Hodge resulting from the Government's Rule 16 violation, the Court concludes that Hodge has failed to demonstrate that a continuance of trial is a necessary or appropriate remedy here. Further, dismissal of the Indictment would be a wholly inappropriate remedy given the absence of any showing that the Government engaged in willful misconduct by failing to disclose the recording. *See Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 259 (3d Cir. 2005). Accordingly, the Court will deny Hodge's Motion for Sanctions.

### III. CONCLUSION

For the reasons discussed above, the Court will deny Hodge's Motion for Sanctions. An appropriate Order accompanies this Memorandum Opinion.

Date: May 20, 2018

_____/s/_____
WILMA A. LEWIS
Chief Judge

---

[8] The Court does not suggest that it takes the Government's discovery violation lightly. Given the discovery issues that plagued the first trial, the Court required the Government to thoroughly review its discovery during the pretrial period and attest that it had made all reasonable efforts to disclose discoverable materials. Nonetheless, the Court does not find that the apparent oversight with respect to the disclosure of the recording warrants sanctions in this instance—especially in light of the Government's disclosure of the DEA-6 discussing the recording and summarizing its contents.