# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | |
| ) | |
| **SERGIO QUINONES-DAVILA,** ) | |
| **OMY A. GUTIERREZ-CALDERON,** ) | Criminal Action No. 2016-0009 |
| **JOSE R. HODGE,** ) | |
| **ANIBAL A. VEGA-ARIZMENDI,** ) | |
| **JESUS BURGOS-MONTANEZ, and** ) | |
| **JEAN CARLOS VEGA-ARIZMENDI,** ) | |
| ) | |
| **Defendants.** ) | |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**Kye Walker, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Sergio Quinones-Davila*

**Mark L. Milligan, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Omy A. Guiterrez-Calderon*

**Renee D. Dowling, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jose R. Hodge*

**Eszart A. Wynter, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Anibal A. Vega-Arizmendi*

**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jesus Burgos-Montanez*

**Robert J. Kuczynski, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jean Carlos Vega-Arizmendi*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Joint Motion to Exclude [Government] Exhibit 610 and Objection to Court's Proposed Limiting Instruction" ("Joint Motion") (Dkt. No. 1466) filed by Defendants Sergio Quinones-Davila ("Quinones-Davila") and Jose R. Hodge ("Hodge"); and the Government's Opposition to the Joint Motion ("Opposition") (Dkt. No. 1475). Defendants Jean Carlos Vega-Arizmendi, Anibal Vega-Arizmendi, and Omy Gutierrez-Calderon join in the Joint Motion. (Dkt. Nos. 1467, 1468, 1469). For the reasons discussed below, the Court will deny the Joint Motion filed by Quinones-Davila and Hodge.[1]

## I. BACKGROUND

Defendants in this matter are charged in a six-count Second Superseding Indictment ("Indictment") filed on February 21, 2018. (Dkt. No. 1216). All Defendants are charged in Count 1 with conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 846. *Id.* at 3. The Indictment alleges that "[f]rom on or about January 2014 until on or about March 2016," Defendants and others "did conspire and agree with one another . . . to knowingly and intentionally possess, with intent to distribute, more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride (cocaine powder) . . . and a detectible amount of marijuana . . . ." *Id.* The Indictment further alleges that during the conspiracy, some of the Defendants traveled by boat south of St. Croix to effect the mid-sea retrieval of cocaine, which was then brought back to St. Croix and transshipped to Puerto Rico. *Id.* at 4.

---

[1] The specific language of a limiting instruction was not at issue. Quinones-Davila and Hodge's objection was to the Court's proposal to give *any* limiting instruction based on their contention that Government Exhibit 610 should not be admitted. On May 21, 2018, the Court ruled from the bench that the Joint Motion was denied and gave a limiting instruction, while indicating that this Opinion would follow.

A first trial in this matter resulted in a mistrial in July 2017. A second trial began on April 30, 2018. In the interest of judicial efficiency, an authentication hearing was held on April 25, 2018 to address audio recordings the Government intended to introduce into evidence at trial. Defendants challenged the authenticity of some of the recordings at the hearing, and challenged the admission of most of the recordings on hearsay grounds.[2]

In Government Exhibit 610 ("Exhibit 610")—an audio recording of a conversation that confidential informant Timothy Schoenbohm testified was between himself and Hodge—Hodge allegedly states that he knows that money Schoenbohm claims was discovered in the ocean by fishermen is real because he counted it. The Government contends that the money allegedly referenced by Hodge is the same money that was purportedly dumped into the ocean off of St. Croix during a June 2015 event identified in the Indictment. Defendant Jean Carlos Vega-Arizmendi ("Jean Vega-Arizmendi") challenged the admission of Exhibit 610 against Defendants other than Hodge on hearsay grounds, arguing that Hodge's statements—purportedly made in October 2015—were not made in furtherance of the conspiracy as they represented a mere narration of a past event (the alleged June 2015 money dump).

During trial on May 16, 2018, the Court informed the parties that it was sustaining Jean Vega-Arizmendi's hearsay objection to the admission of Hodge's statements against all Defendants.[3] The

---

[2] In this multi-defendant conspiracy case, the audio recordings the Government seeks to introduce contain statements of alleged coconspirators. The Government therefore seeks to admit the out-of-court statements of those alleged coconspirators against Defendants as non-hearsay under Federal Rule of Evidence 801(d)(2)(E), which provides, in relevant part, that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. FED. R. EVID. 801(d)(2)(E).

[3] In this regard, the Court finds that the Government has failed to prove by a preponderance of the evidence that Hodge's alleged statements were made in furtherance of the conspiracy. The Court concludes that Hodge's alleged statements to Schoenbohm—purportedly made approximately four months after the alleged June 2015 money dump of which Scheonbohm was allegedly already aware—were simply a narration of a past event. The conversation did not concern the future of the conspiracy, provide a status update, or otherwise serve to maintain trust and cohesiveness among the

Court recognized, however, that although it had determined that Hodge's statements were not made in furtherance of the conspiracy as required for their admission as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E), the statements—as the Government argued—were still admissible against *Hodge* under Federal Rule of Evidence 801(d)(2)(A) as the statements of a party-opponent. The Court therefore proposed to issue an instruction limiting the jury's consideration of Exhibit 610 to the case against Hodge. Following oral objections to the issuance of a limiting instruction lodged by Quinones-Davila and Hodge, the Court ordered the parties to brief the issue.

In their Joint Motion, Quinones-Davila and Hodge contend that, rather than issue a limiting instruction, the Court should "exclude Exhibit 610 completely to avoid the prejudicial spillover that will likely occur in light of the nature of the conspiracy charge against defendants." (Dkt. No. 1466 at 3).[4] They argue that because a conspiracy is charged, Hodge's alleged statements would "attach[] to every Defendant charged in the conspiracy." *Id.* at 4. They further argue that because Exhibit 610 includes Hodge's alleged statement that he knows that money being found by fishermen is real because he counted it, this admission "could necessarily spillover to all defendants, particularly Jean Carlos Vega-Arizmendi who is actually alleged to be on the boat when the ocean dump occurred." *Id.* at 2, 4. Quinones-Davila and Hodge argue that Exhibit 610 should be excluded under Federal Rule of Evidence 403 ("Rule 403") because its "probative value . . . is outweighed by the high potential for prejudicial spillover due to the nature of the conspiracy charge." *Id.* at 5. They also argue that juror confusion may ensue if a limiting instruction is given as the jury may conclude, based on

---

coconspirators. Accordingly, Hodge's statements may not be admitted against Defendants under Federal Rule of Evidence 801(d)(2)(E).

[4] Quinones-Davila and Hodge also assert that a "limiting instruction itself may be unduly prejudicial to Hodge . . . ." *Id.* However, because no argument in support of this assertion is offered in the Joint Motion, the Court will direct its attention to the arguments advanced with regard to the insufficiency of a limiting instruction in this case in light of potential prejudicial spillover to other Defendants and the nature of the conspiracy charge.

Hodge's alleged statement, that the money allegedly involved in the ocean dump existed and was real, and from these conclusions infer that the alleged money dump occurred and that the money was dumped by one or more of the other Defendants. *Id.* Finally, Quinones-Davila and Hodge argue that Exhibit 610 is cumulative, as other evidence of the alleged money dump has already been admitted. *Id.*

In its Opposition, the Government argues that "juries are presumed to follow limiting instructions," and that the Third Circuit "has regularly upheld the efficacy of such instructions[] in cases involving evidence that was far more damaging than the testimony at issue here." *Id.* at 3. It therefore urges the Court to "reject the contention that this jury will not follow any limiting instruction" provided with respect to Exhibit 610. *Id.*

## II. DISCUSSION

Federal Rule of Evidence 105 provides that where "the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." FED. R. EVID. 105. Where a limiting instruction is given, a jury is presumed to follow the instruction "unless there is an overwhelming probability" that it will be unable to do so. *United States v. Vaulin*, 132 F.3d 898, 901 (3d Cir. 1997) (quoting *United States v. Thornton*, 1 F.3d 149, 157 (3d Cir. 1993) ("We must presume that a jury will follow an instruction to disregard inadmissible evidence . . . unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the impact of the evidence would be devastating to the defendant.") (internal quotation omitted)). Even in contexts where "the risk of prejudice is heightened" because "many defendants are tried together in a complex case and they have markedly different degrees of culpability," the Supreme Court has recognized that "limiting instructions[] often will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (citing

5

*Kotteakos v. United States,* 328 U.S. 750, 774-775 (1946); *Richardson v. Marsh,* 481 U.S. 200, 211 (1987)).

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court recognized a narrow exception to the general principle that juries are presumed to follow a court's instructions. There, the Supreme Court concluded:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. . . . Such a context is presented . . . where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Id.* at 135-36 (citations omitted). The *Bruton* Court therefore concluded that, even where a limiting instruction is given, "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial . . . ." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (citing *Bruton*, 391 U.S. at 135-36).

Relying on *Bruton*, Quinones-Davila and Hodge argue that the admission of Exhibit 610—even with an instruction to the jury that Hodge's alleged statements in the exhibit may only be considered in the case against Hodge, and not in the cases against the other Defendants—would present a situation in which "the risk that the jury will not, or cannot, follow instructions is so great" that the limiting instruction would fail to cure the prejudice to the other Defendants resulting from the exhibit's admission. (Dkt. No. 1466 at 3 (quoting *Bruton*, 391 U.S. at 136)). They assert that—given the nature of the evidence and Defendants' inability to cross-examine Hodge—a limiting instruction would be an inadequate substitute for Defendants' right of cross-examination. *Id.* at 4.

Quinones-Davila and Hodge fail to appreciate, however, that the Supreme Court has recognized a distinction between the circumstances present in *Bruton* and those present here. In *Richardson v. Marsh,* 481 U.S. 200 (1987), the Supreme Court considered whether "the admission of a nontestifying codefendant's confession with a proper limiting instruction" violates the

6

Confrontation Clause even where "the confession is redacted to eliminate" the defendant's name and "any reference to his or her existence." *Id.* at 211. In concluding that no constitutional violation results under such circumstances, the Supreme Court noted the "important distinction" between the facts of *Bruton* and those of *Richardson*, which caused *Richardson* to "fall outside the narrow exception" recognized in *Bruton*. *Id.* at 208. Whereas in *Bruton* "the codefendant's confession 'expressly implicat[ed]' the defendant as his accomplice," the confession in *Richardson* "was not incriminating on its face, and became so only when linked with evidence introduced later at trial . . . ." *Id.* (quotation omitted).[5] In other words, although the confession of the codefendant (Williams) in *Richardson* did not expressly implicate the defendant (Richardson), the confession contained statements that—if considered in the context of other evidence against Richardson—could permit an inference of Richardson's guilt.

---

[5] In *Richardson*, Clarissa Richardson and Benjamin Williams were jointly tried on charges of assault and murder. *Id.* at 202. At trial, Williams' post-arrest confession was admitted after it was redacted to omit all references to Richardson, and the jury was instructed not to use the confession against Richardson in its deliberations. *Id.* at 203-05. The confession included a description of a conversation Williams had with another alleged participant in the murders (Martin) while they were driving to the home where the murders occurred, during which Martin stated that he would kill the victims after the robbery. *Id.* at 204.

Richardson later testified at trial, and acknowledged that she was present in the car with Martin and Williams as they drove to the home where the murders occurred, although she claimed that she could not hear any conversation between Martin and Williams over the noise of the car radio. *Id.* She further claimed that she had no intention of robbing or killing anyone. *Id.*

Following Richardson's conviction on the assault and murder charges, the Sixth Circuit on appeal reversed Richardson's conviction, holding that the admission of Williams' confession at the joint trial, even with a limiting instruction, was barred by *Bruton*. *Id.* at 205-06. The Sixth Circuit noted that, while Richardson's own testimony had placed her in the car with Martin and Williams, the confession was "the only *direct* evidence" that Richardson knew that the victims would be robbed and killed before she entered the house. *Id.* at 206. It therefore determined that—given the confession's "inculpatory value" in light of "all of the evidence introduced at trial"—the confession was "powerfully incriminating" against Richardson "with respect to the critical element of intent." *Id.* (quotation omitted). The Supreme Court granted certiorari in light of the conflict among the circuits with respect to this "'evidentiary linkage' or 'contextual implication' approach to *Bruton* questions," and reversed the Sixth Circuit. *Id.*

7

In overturning the Sixth Circuit's reversal of Richardson's conviction, the Supreme Court considered whether Williams' confession should have been excluded from the joint trial—as the Sixth Circuit concluded—in light of the risk that the jury would ignore the limiting instruction given by the court and link Williams' confession to the other evidence against Richardson in making a determination with respect to her guilt or innocence. In concluding that exclusion of the confession was not required, the Supreme Court held that "[w]here the necessity of such linkage is involved," the "overwhelming probability" that a jury will be unable to follow a limiting instruction given by the court—which was "the foundation of *Bruton*'s exception to the general rule"—is not present. *Id.* at 208.

In so ruling, the Supreme Court agreed with those courts—including the Third Circuit—which had "declined to adopt the 'evidentiary linkage' or 'contextual implication' approach to *Bruton* questions . . . ." *Id.* at 206. In *United States v. Belle*, 593 F.2d 487 (3d Cir. 1979), the Third Circuit considered whether the admission of a statement made by Belle's codefendant in a joint trial on charges of conspiracy to possess and possession of heroin violated his Sixth Amendment rights under the rule announced in *Bruton*. *Id.* at 489, 491-94. The codefendant's statement did not mention or refer to Belle, and it did not directly implicate Belle in criminal activity. *Id.* at 489, 495. In addition, because the codefendant's statement was made while he was in custody, the district court determined that "it was not made in the course of and in furtherance of the conspiracy," and therefore "was not admissible against Belle under the co-conspirator exception to the hearsay rule." *Id.* at 492 n.7. Under these circumstances, the district court denied Belle's request for the exclusion of the codefendant's statement at trial, and admitted it as the statement of a party-opponent with an instruction that it could be considered only against the codefendant, and not against Belle. *Id.* at 492.

On appeal, Belle argued that admission of his codefendant's statement—even with the limiting instruction—violated his Sixth Amendment rights under the rule announced in *Bruton*. *Id.* at

8

491. Belle contended that references to the codefendant's involvement in prior heroin transactions—which included information about (1) the delivery of drugs to a donut shop where Belle was observed shortly before a scheduled drug delivery and (2) the involvement in prior transactions of a third individual (Roberts) in whose company Belle was arrested—would lead the jury to draw "inevitable and highly prejudicial" inferences about Belle's own participation in the heroin transactions. *Id.* at 492.

Rejecting Belle's argument, the Third Circuit noted that Belle's position would imply that "whenever a codefendant . . . incriminates himself in a statement which by its express terms does not mention or refer to a joint defendant . . . the Bruton rule will preclude its admission into evidence in a joint trial if there is any other evidence which links the complaining defendant . . . to the substance of the statement." *Id.* at 493. The Third Circuit concluded that such a "far-reaching result" was not intended by the *Bruton* Court, and thus rejected the "evidentiary linkage" or "contextual implication" approach to *Bruton* urged by Belle. *Id.* at 493-94. The Third Circuit further found that, because the statements challenged by Belle only implicated him to the extent that the jury might use them in connection with other admissible evidence to draw inferences about Belle's guilt, the codefendant's statements were not as "clearly inculpatory" or "powerfully incriminating" as the codefendant's confession in *Bruton*. *Id.* at 495.[6]

As was the case in *Richardson* and *Belle*, Hodge's alleged statements in Exhibit 610 do not expressly reference any other Defendant by name, nor do they make reference to the existence of any of the individual Defendants or their participation in the alleged money dump. The statements implicate other Defendants only to the extent that the jury might consider them in conjunction with

---

[6] The *Belle* Court also noted that one of the principal concerns in *Bruton* was "the unreliability of statements by a codefendant which tend to shift responsibility to an accomplice, especially where such evidence cannot be tested by cross-examination." *Id.* at 495 n.12 (citing *Bruton*, 391 U.S. at 136). Because the codefendant's statements in *Belle* "in no way shift[ed] blame to Belle or to anyone else," this concern with respect to the reliability of the codefendant's statements was absent. *Id.*

9

other properly admitted evidence to conclude that the alleged money dump actually occurred and that other Defendants participated in it. As the holdings of *Richardson* and *Belle* clearly establish, where the risk of prejudice in a joint trial results from the prospect that a jury will draw an inference against a defendant by linking evidence that may not be considered against him to other evidence that has been properly admitted against him, exclusion of the evidence that may not be considered against the defendant is not required provided that it is admitted "with a proper limiting instruction" prohibiting the jury from using it for that purpose. *Richardson*, 481 U.S. at 211. Further, the serious concern with the reliability of a codefendant's statement that was recognized in *Bruton* is not present here, as Hodge's purported statements do not attempt to shift blame for the alleged money dump onto any other Defendant. *See Belle*, 593 F.2d at 495 n.12.

The Court also rejects the argument advanced by Quinones-Davila and Hodge that exclusion of Exhibit 610 is required here in light of the fact that Count 1 of the Indictment charges all Defendants jointly in a conspiracy. Quinones-Davila and Hodge contend that because the jury could infer from Hodge's purported statements that the alleged money dump occurred—and because the Court will instruct the jury that the Government need not prove that a particular defendant knew everything about the conspiracy to establish that defendant's membership in the conspiracy—the occurrence of the alleged money dump is "an event for which all defendants could be found guilty" even if they did not all participate in it. (Dkt. No. 1466 at 4).

Taking this argument to its logical extreme, Quinones-Davila and Hodge are in essence contending that even where the statements of a codefendant do not directly implicate another defendant, or where references to other defendants are redacted to address a *Bruton* problem, those statements will never be admissible in the context of a conspiracy trial if they have any relevance to the existence of the charged conspiracy. But these are precisely the types of "far-reaching result[s]" that were rejected in *Belle*. *See Belle*, 593 F.2d at 493. In fact, *Belle* itself involved a conspiracy

charge, and its holding rejected an argument that a limiting instruction was insufficient to address the possible prejudicial effect of the codefendant's statement where that statement was inadmissible against Belle because it was not made during the course of the conspiracy. *Id.* at 492 n.7. If anything, the risk to Belle that his codefendant's statement would implicate him by inference in the charged conspiracy was *greater* than the risk Defendants face here, as the codefendant's statement in *Belle* described prior heroin transactions involving circumstances similar to the transaction that led to Belle's arrest, and inculpated an individual in whose company Belle was later arrested. *See id.* at 492. In light of *Belle* and *Richardson*, the argument advanced by Quinones-Davila and Hodge that a limiting instruction is insufficient to address potential prejudice to other Defendants in this case because of the nature of the conspiracy charged must fail. *See also United States v. Delgado*, 289 F. App'x 497, 502 (3d Cir. 2008) (statements of a codefendant admissible with a limiting instruction in a conspiracy trial—even where they might create "a strong inference that [other defendants] were involved with the [codefendant] in the conspiracy to distribute drugs") (citing *Belle*, 593 F.2d at 494); *United States v. Norwood*, 50 F. Supp. 3d 810, 816-17 (E.D. Mich. 2014) (severance not warranted in the context of a multi-defendant Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy case to address potential prejudice resulting from the admission of a statement tending "to prove the fact that there was a gang"—i.e., evidence relevant to the existence of the charged conspiracy—against one defendant but not against her codefendants, where such prejudice could be addressed through a limiting instruction at trial).

Finally, with regard to the Rule 403 challenge, Quinones-Davila and Hodge have not shown that the probative value of Exhibit 610 is substantially outweighed by the risk of unfair prejudice, needlessly presenting cumulative evidence, or confusion of the issues. *See* FED. R. EVID. 403. Hodge's alleged statements are highly probative with respect to his own knowledge of the alleged money dump. Because the alleged statements arguably link Hodge directly to the alleged money dump, they

are not simply cumulative of other evidence related to that event. And "while it may not always be simple for the members of a jury to obey [an] instruction," the Court does not find that a limiting instruction here would result in an "overwhelming probability" that the jury would be unable to follow the instruction. *Richardson*, 481 U.S. at 208. Accordingly, given the substantial probative value of Exhibit 610—and because the Court determines in light of *Richardson* and *Belle* that a limiting instruction is the most appropriate means of addressing any potential prejudice to other Defendants that may arise through its admission—the Court will deny the request by Quinones-Davila and Hodge for the exclusion of Exhibit 610.

### III. CONCLUSION

For the reasons discussed above, the Court will deny the Joint Motion to exclude Exhibit 610 filed by Quinones-Davila and Hodge. The Court will issue an instruction limiting the jury's consideration of Exhibit 610 to the case against Hodge, and will prohibit the Government from making any suggestion in its closing argument or otherwise that the jury may consider Exhibit 610 in the cases against other Defendants.[7] An appropriate Order accompanies this Memorandum Opinion.

Date: May 25, 2018  _____/s/_____
WILMA A. LEWIS
Chief Judge.

---

[7] The Court finds it prudent to include this prohibition in its Order to avoid the problem identified in *Richardson*, where the prosecutor's closing argument impermissibly linked Williams' statement to evidence against Richardson. *See Richardson*, 481 U.S. at 205.