# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal Action No. 2016-0009** |
| | ) | |
| **JOSE R. HODGE, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Attorneys:
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**Renee D. Dowling, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jose R. Hodge*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Jose R. Hodge's ("Defendant Hodge" or "Defendant") Post-Trial Motion for Judgment of Acquittal ("Motion for Judgment of Acquittal" or "Motion") and corresponding memorandum in support (Dkt. Nos. 1605, 1606), and the Government's Response to Defendant's Motion for Judgment of Acquittal (Dkt. No. 1648). For the reasons set forth below, Defendant Hodge's Motion for Judgment of Acquittal will be denied.[1]

---

[1] At the outset of the sentencing hearing for Defendant Hodge on October 31, 2018, the Court announced its ruling that the Motion for Judgment of Acquittal was denied and that the Court's Opinion would follow. This Memorandum Opinion contains the Court's rationale for its ruling.

## I. BACKGROUND

Defendant Hodge was charged in Counts 1, 2, 3, 5, and 6 of a Second Superseding Indictment ("Indictment"), filed on February 21, 2018, with conspiracy to possess a controlled substance with intent to distribute in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 846, attempted possession of a controlled substance with intent to distribute in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 18 U.S.C. § 2, and possession of a controlled substance with intent to distribute in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 18 U.S.C. § 2. (Dkt. No. 1216).[2]

Count 1 of the Indictment alleged that "[f]rom on or about January 2014 until on or about March 2016," Defendant Hodge and others "did conspire and agree with one another . . . to knowingly and intentionally possess, with intent to distribute, more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride (cocaine powder) . . . and a detectible amount of marijuana . . . ." *Id.* The Indictment further alleged that during the conspiracy, some of the Defendants traveled by boat south of St. Croix to retrieve cocaine at mid-sea, which was then brought back to St. Croix and transshipped to Puerto Rico. *Id.* at 4. Some of the alleged attempts were successful and others were unsuccessful. Counts 2, 3 and 5 of the Indictment alleged that Defendant Hodge and others participated in attempts to retrieve cocaine at mid-sea between November 10 and 12, 2014, December 13 and 14, 2014, and November 9 through 12, 2015, respectively. *Id.* at 9-10, 12. Count 6 of the Indictment alleged that Defendant Hodge and others participated in the successful retrieval of cocaine at mid-sea on or about November 14, 2015. *Id.* at 13.

---

[2] A first trial in this matter resulted in a mistrial in July 2017. After the filing of the Second Superseding Indictment, a second trial began on April 30, 2018.

Following trial, the jury returned guilty verdicts against Defendant Hodge on all five counts on June 26, 2018. (Dkt. No. 1575). Defendant then filed the instant Motion for Judgment of Acquittal.

## II.    APPLICABLE LEGAL PRINCIPLES

Rule 29 of the Federal Rules of Criminal Procedure provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). Pursuant to Rule 29(c), a "defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." FED. R. CRIM. P. 29(c)(1). For a Rule 29 motion, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McIntyre*, 612 F. App'x 77, 78 (3d Cir. 2015) (emphasis in original) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-25 (3d Cir. 2013) (quotations omitted)); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) ("In reviewing a Fed. R. Crim. P. 29 post-verdict motion for judgment of acquittal, a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'") (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

A defendant "challenging the sufficiency of the evidence bears a heavy burden," *United States v. Donna*, 366 F. App'x 441, 450 (3d Cir. 2010), and an insufficiency finding should be "confined to cases where the prosecution's failure is clear." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (quotations omitted). It is well-established that, on a Rule 29 motion, evidence should not be viewed in a vacuum but in relation to the totality of the evidence elicited in a case.

*See United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (noting that, in reviewing a sufficiency of evidence claim, courts "examine the totality of the evidence, both direct and circumstantial") (quoting *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009) (quotations omitted)). Thus, "[t]he question is whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt." *Caraballo-Rodriguez*, 726 F.3d at 432 (quotations omitted). It is "immaterial" that the evidence may permit a "less sinister conclusion" than one of guilt. *Smith*, 294 F.3d at 478 (quotations omitted). In other words, "the evidence does not need to be inconsistent with every conclusion save that of guilt." *Id.* (quotations omitted).

With regard to Count 1 of the Indictment—conspiracy to possess with intent to distribute more than five kilograms of cocaine—the Third Circuit Model Jury Instructions provide that the Government must prove the following three elements: (1) that two or more persons agreed to possess with the intent to distribute a controlled substance; (2) that Defendant Hodge was a party to or member of that agreement; and (3) that Defendant Hodge joined the agreement or conspiracy knowing of its objectives to possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Defendant Hodge and at least one other alleged conspirator shared a unity of purpose, and the intent to achieve that objective. MOD. CRIM. JURY INSTR. 3RD CIR. 6.21.846B.

While the Government must establish each element beyond a reasonable doubt, "[i]t may do so with direct or circumstantial evidence." *Caraballo-Rodriguez*, 726 F.3d at 425. "Indeed, the very nature of the crime of conspiracy is such that it often may be established only by indirect and circumstantial evidence." *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005) (citations omitted). The Third Circuit has noted that "[t]he existence of a conspiracy can be inferred from

evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants could not have been carried on except as the result of a preconceived scheme or common understanding." *United States v. Mark*, 533 F. App'x 83, 85 (3d Cir. 2013) (quoting *Brodie*, 403 F.3d at 134) (quotations and ellipses omitted). Nonetheless, "[c]ircumstantial inferences drawn from the evidence must bear a 'logical or convincing connection to established fact.'" *Caraballo-Rodriguez*, 726 F.3d at 425 (quoting *United States v. Cartwright*, 359 F.3d 281, 291 (3d Cir. 2004)).

As to Counts 2, 3 and 5 of the Indictment—attempted possession with the intent to distribute more than five kilograms of cocaine—the Government must prove: (1) that Defendant Hodge intended to commit the crime of possession of cocaine with intent to distribute; and (2) that Defendant Hodge performed an act constituting a substantial step toward the commission of possession of cocaine with intent to distribute which strongly corroborates or confirms that the defendant intended to commit that crime. MOD. CRIM. JURY INSTR. 3RD CIR. 7.01; *see also United States v. Earp*, 84 F. App'x. 228, 232-34 (3d Cir 2004). To prove the crime of possession with intent to distribute, the Government must establish that Defendant Hodge: "(1) knowingly possessed [the] controlled substance with (2) the intent to distribute it." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (quotations omitted). Intent to distribute may be inferred from the quantity of the drug possessed by the defendant. *See United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992) ("When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone.").

To prove Count 6 of the Indictment—possession of cocaine with intent to distribute—the Government is required to show that: (1) Defendant Hodge possessed a mixture or substance containing a controlled substance; (2) Defendant Hodge possessed the controlled substance

knowingly or intentionally; (3) Defendant Hodge intended to distribute the controlled substance; and (4) the controlled substance was cocaine hydrochloride (cocaine powder). MOD. CRIM. JURY INSTR. 3RD CIR. 6.21.841A.

As to Counts 2, 3, 5, and 6 of the Second Superseding Indictment, Defendant Hodge was charged under an aiding and abetting theory. Accordingly, Defendant Hodge's guilt on those counts can be established through proof that: (1) someone committed each of the essential elements of the charged offense; (2) Defendant Hodge knew that the charged offense was going to be committed; (3) Defendant Hodge knowingly did some act for the purpose of aiding, assisting, facilitating or encouraging the commission of the charged offense and with the intent that the charged offense be committed; and (4) Defendant Hodge's act or acts did, in some way, aid, assist, facilitate or encourage the commission of the crime. MOD. CRIM. JURY INSTR. 3RD CIR. 7.02.

## III. DISCUSSION

### A. Evidence Adduced at Trial

The following evidence, pertinent to Defendant Hodge's Motion, was elicited at trial. All of the evidence is based on the testimony of the witnesses and/or grounded in exhibits introduced by the Government.

Confidential informant Timothy Schoenbohm ("Schoenbohm") testified that around August 2014 he met Defendant Hodge and they began to plan a "job" in which they would use Schoenbohm's boat—the Scorpion—to meet with another boat south of St. Croix to collect a load of cocaine.[3] Schoenbohm learned that the job was for Defendant Sergio Quinones-Davila.

---

[3] According to the evidence, Schoenbohm was initially a member of the alleged drug organization until November 13, 2014, when he agreed to become a Government confidential source after he was stopped by police following an unsuccessful attempt to retrieve drugs and found to be in unlawful possession of a gun.

Schoenbohm and Defendant Quinones-Davila exchanged texts prior to the job in which Defendant Quinones-Davila encouraged Schoenbohm. Schoenbohm and Defendant Hodge later went out to sea and successfully retrieved 35 kilograms of cocaine. Schoenbohm further testified that after he and Defendant Hodge retrieved the cocaine, Defendant Quinones-Davila traveled to St. Croix and met with Defendant Hodge and Schoenbohm. At the meeting, Defendant Quinones-Davila shook Schoenbohm's hand, told him "great job," and said that there was a lot more work to do.

In October 2014, Schoenbohm and Defendant Hodge began preparations for another job— this time for the retrieval of 71 kilograms of cocaine. Some of the cocaine was for Defendant Hodge and some was for Defendant Quinones-Davila. Defendant Hodge and Schoenbohm made the first trip out to sea to pick up the drugs, but they were unsuccessful. Later, Defendant Hodge, Defendant Anibal Vega-Arizmendi, and Jean Cruz-Albert made a second trip out to sea, which was also unsuccessful. On the third trip, Schoenbohm, Defendant Anibal Vega-Arizmendi, and Cruz-Albert went out to sea and successfully retrieved the drugs. The cocaine was briefly stored at Schoenbohm's residence, and was later transferred to Defendant Hodge's residence. Co-conspirator Carmelo Cruz-Velez arrived on St. Croix in a private plane. Defendant Hodge, Schoenbohm, and Cruz-Velez transported the cocaine to the airport in suitcases, where it was loaded onto Cruz-Velez's plane and flown to Puerto Rico.

Schoenbohm testified that Defendant Hodge contacted him in November 2014 regarding an attempted retrieval of an 80-kilogram load of cocaine at sea for Defendant Quinones-Davila. The Government introduced text messages from Defendant Hodge to Schoenbohm in which Defendant Hodge asked Schoenbohm to check "lotto numbers" for him—which Schoenbohm testified referred to GPS coordinates identifying a location for the mid-sea transfer of cocaine between vessels. On November 12, 2014, Schoenbohm and Defendant Hodge traveled on

Schoenbohm's boat approximately 65 nautical miles south of St. Croix in an attempt to retrieve a load of cocaine, but were unable to locate the supply vessel and returned to St. Croix. Upon their return, Schoenbohm and Defendant Hodge were stopped by law enforcement in Schoenbohm's truck as they were towing the Scorpion near Chenay Bay. Law enforcement performed a consent search of Schoenbohm's truck and the Scorpion, and discovered a backpack in the truck containing a firearm. Following the vehicle stop and the discovery of the firearm, Schoenbohm met with DEA agents on November 13, 2014 and agreed to become a confidential informant for the Government. Schoenbohm informed law enforcement that Defendant Guiterrez-Calderon gave him the firearm discovered in Schoenbohm's vehicle for use in protection during mid-sea retrievals of cocaine. That same day, Schoenbohm recorded conversations with Defendants Hodge and Quinones-Davila discussing the attempted retrieval of cocaine. Although Defendant Quinones-Davila encouraged Schoenbohm to make another attempt to retrieve the load of cocaine, Schoenbohm and Defendant Hodge decided not to make another attempt following the vehicle stop.

Schoenbohm further testified regarding a job that occurred in December 2014. Schoenbohm was on St. Thomas when Defendant Hodge contacted him about using Schoenbohm's boat to retrieve cocaine. Defendant Hodge arranged to have Jean Cruz-Albert and Gamalier Rohlsen-Arizmendi pick up Schoenbohm in St. Thomas and transport him by boat to St. Croix. Once on St. Croix, Schoenbohm observed Defendants Hodge, Anibal Vega-Arizmendi, Jean Carlos Vega-Arizmendi, and Omy Guiterrez-Calderon at a hotel at Chenay Bay during discussions about the retrieval of a 30-kilogram load of cocaine. Schoenbohm testified that Defendant Anibal Vega-Arizmendi, Cruz-Albert, and Rohlsen-Arizmendi made two unsuccessful attempts to retrieve the cocaine on Schoenbohm's boat—the Scorpion. This testimony was corroborated by law enforcement surveillance photographs. Schoenbohm traveled to St. Thomas

after the unsuccessful attempts. At Defendant Omy Gutierrez-Calderon's request, Schoenbohm left the Scorpion for use in another attempt to retrieve the cocaine. Schoenbohm testified that he later received a call from Defendant Hodge informing him that the retrieval had been successful and that the Scorpion was in Puerto Rico.

The Government introduced recorded conversations that took place between Schoenbohm and Defendant Quinones-Davila in November 2015 in which Defendant Quinones-Davila asked Schoenbohm whether his boat was ready and told him not to go anywhere. Soon thereafter, Defendant Hodge called Schoenbohm and told Schoenbohm to meet him and others at the Pueblo Supermarket parking lot in St. Croix. After Defendant Hodge called Schoenbohm, Defendant Quinones-Davila called Schoenbohm and asked "I surprise you – eh?" When Schoenbohm went to the parking lot, he saw Defendant Hodge, Defendant Anibal Vega-Arizmendi, and Cruz-Albert, and they talked about the upcoming job.

On November 9, 2015, Schoenbohm, Defendant Anibal Vega-Arizmendi, Cruz-Albert, and an individual identified as Juan went out on the first of several attempts to obtain drugs, but because of rough seas they returned without retrieving the drugs. Schoenbohm testified that Defendant Hodge introduced Schoenbohm to an individual named Danny—a.k.a. Daniel Santiago-Colon— whom Defendant Hodge said was a good captain and could drive Schoenbohm's boat. The next day, Schoenbohm launched his boat and let others take it on another attempt, but the attempt was again unsuccessful. The following day, Santiago-Colon, Juan, and Defendant Anibal Vega-Arizmendi used a green Spider boat on another unsuccessful attempt. Before this attempt, Defendant Hodge called Schoenbohm in order to retrieve four suitcases from Schoenbohm's boat—three of which Schoenbohm had purchased and one which Defendant Hodge had provided—for use in transporting the cocaine upon its retrieval at mid-sea.

With regard to the last attempt, the Government introduced text messages from Defendant Quinones-Davila to Schoenbohm on November 11, 2015 regarding the transfer of money through Western Union for fuel for Schoenbohm's boat for use in the attempted retrieval of cocaine, as well as additional evidence that Schoenbohm successfully retrieved money from Western Union using the information that Defendant Quinones-Davila provided him. The Government also introduced text messages from Defendant Quinones-Davila to Schoenbohn on November 12, 2015 encouraging Schoenbohm to retrieve the load of cocaine and informing him that he would get a bonus for all of his help. A text message from Defendant Hodge to Schoenbohm on November 12, 2015, instructing Schoenbohm to provide his name to Defendant Gutierrez-Calderon, was also introduced by the Government, as was an audio recording of a conversation between Schoenbohm and Defendant Gutierrez-Calderon in which Defendant Gutierrez-Calderon asked for the spelling of Schoenbohm's name and told him to "go now." Schoenbohm testified that these conversations were in relation to the transfer of money through Western Union for fuel for his boat in a subsequent attempt to retrieve drugs.

On November 13, 2015, Schoenbohm, Defendant Hodge, and Rohlsen-Arizmendi brought a gas tank to the beach at Coakley Bay for use in an attempted retrieval of cocaine on Schoenbohm's boat, where they met Defendant Burgos-Montanez and Santiago-Colon. The gas tank was loaded onto Schoenbohm's boat, and Rohlsen-Arizmendi, Santiago-Colon, and Defendant Burgos-Montanez boarded the boat and headed east. DEA Task Force Officer Aldemar Santos testified that at about 2:00 a.m. the next morning, he arrived at Knight's Bay and saw Defendant Hodge being detained by another officer. TFO Santos walked along the beach with his flashlight and observed Rohlsen-Arizmendi, Defendant Burgos-Montanez, and an individual later identified as Alejandro Marva-Romero conversing with each other. When TFO Santos announced

"policia," two of the three men ran. Law enforcement officers were able to detain Rohlsen-Arizmendi and Marva-Romero and discovered four suitcases nearby. Schoenbohm identified the suitcases in photographs as the same suitcases that were involved in the earlier attempts. It was later determined that the suitcases collectively contained 87 kilograms of cocaine. Later that same morning, TFO Santos observed Defendant Burgos-Montanez walking along the road and placed him under arrest.

The Government introduced evidence that Defendant Quinones-Davila had a conversation with Schoenbohm after the arrests. During the conversation, Defendant Quinones-Davila inquired about the whereabouts of Santiago-Colon, and told Schoenbohm that Schoenbohm's and Santiago-Colon's names were being called. Schoenbohm understood this to mean that the individuals that had been arrested were accusing him and Santiago-Colon of setting them up.

### B. Analysis

In his Motion for Judgment of Acquittal, Defendant Hodge challenges the sufficiency of the Government's evidence as to each of the counts against him. The Court will address each count in turn.

#### 1. Count 1

As to the conspiracy charged in Count 1 of the Indictment, Defendant Hodge argues that the evidence at trial established the existence of more than one conspiracy. (Dkt. No. 1606 at 2). He asserts that evidence at trial that two of the alleged organizers of the drug trafficking conspiracy—Defendant Hodge and Defendant Quinones-Davila—did not get along and refused to work together in connection with the attempts to retrieve a load of cocaine at mid-sea in November 2015 created a variance between the Indictment and the proof presented at trial such that Defendant Hodge's rights were prejudiced. *Id.* at 2-3. Specifically, Defendant Hodge points to evidence that

members of the conspiracy were told not to inform Defendant Hodge about the attempted retrieval of cocaine in November 2015, or, alternatively, that members of the conspiracy were told not to inform Defendant Hodge that the job was for Defendant Quinones-Davila as indicative of the Government's failure to establish the three elements necessary to prove the charged conspiracy—namely: (1) that two or more persons agreed to possess with the intent to distribute a controlled substance; (2) that Defendant Hodge was a party to or member of that agreement; and (3) that Defendant Hodge joined the agreement or conspiracy knowing of its objectives to possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective.

The Government responds that Defendant's variance argument focuses only on the events of November 2015 and ignores evidence related to cooperation between Defendant Hodge and Defendant Quinones-Davila to traffic drugs during the August 2014, October 2014, and November 2014 events. (Dkt. No. 1648 at 3). It further argues that evidence of a dispute between Defendant Hodge and Defendant Quinones-Davila does not establish the existence of multiple conspiracies, and thus a rational jury could have concluded from the evidence, beyond a reasonable doubt, that the single conspiracy charged in the Indictment existed. *Id.* at 4-5. The Government therefore contends that no variance occurred and that Defendant Hodge's rights were not prejudiced. *Id.* at 5.

When evaluating whether a series of events constitutes a single conspiracy or separate unrelated events, the Third Circuit looks at the following three factors set forth in *United States v. Kelly*, 892 F.2d 255 (3d Cir. 1989):

> First, we examine whether there was a common goal among the conspirators. Second, we look at the nature of the scheme to determine whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators. Third, we examine the extent to which the participants overlap in the various dealings.

*Kelly*, 892 F.2d at 259. While these three *Kelly* factors are "useful to show the existence of a single conspiracy . . . the absence of one factor does not necessarily defeat an inference of the existence of a single conspiracy." *United States v. Padilla*, 982 F.2d 110, 115 (3d Cir. 1992).

In providing its rationale at trial regarding the admissibility of co-conspirator statements against all Defendants under Federal Rule of Evidence 801(d)(2)(E)—specifically in the context of addressing the existence of a conspiracy—the Court stated its reasons for concluding that the Government had presented sufficient evidence to establish the existence of a single conspiracy by a preponderance of the evidence. The Court now finds, based on the same legal and factual underpinnings, that the evidence presented by the Government—when viewed in the light most favorable to the prosecution—is sufficient to allow a rational trier of fact to find the existence of the single conspiracy charged in Count 1 beyond a reasonable doubt.

### a. Common Goal

When interpreting the first *Kelly* factor, courts do not restrict the meaning of "common goal" to a particular drug transaction. For example, the Third Circuit in *Kelly* held that "the common goal of all the participants was simply to make money selling 'speed'" and that "[a]lthough the various personnel changed during the period from 1983 to 1987, the central purpose was constant and pervasive." *Kelly*, 892 F.2d at 259. In finding that a single conspiracy existed, the Third Circuit noted that even a "finding of a master conspiracy with sub-schemes does not constitute a finding of multiple, unrelated conspiracies." *Id.* at 258 (quoting *United States v. Smith*, 789 F.2d 196, 200 (3d Cir. 1986) (quotations omitted)); *see also United States v. Fausnaught*, 380 F. App'x 198, 201 (3d Cir. 2010) (noting that "the common goal among Fausnaught, Sechler, and their coconspirators was to make money from selling drugs[, and that]

[t]his was a goal that Fausnaught, Sechler, and others pursued through coordinated efforts from prior to 1995 through 2003").

With respect to the first *Kelly* factor, the Court concludes that there is sufficient evidence in the record for a rational jury to conclude beyond a reasonable doubt that the common goal or objective of the Defendants and other co-conspirators was to acquire illegal drugs and distribute them for financial gain. The Government presented evidence in the form of testimony from Schoenbohm—as well as text messages and audio recordings—that support findings that Schoenbohm and Defendant Hodge first discussed picking up drugs south of St. Croix using Schoenbohm's boat in August 2014, and that they used GPS coordinates to determine where the retrievals would take place. Defendant Hodge put Schoenbohm in touch with Defendant Quinones-Davila in relation to the retrieval of cocaine in August 2014, and text messages were exchanged. After Defendant Hodge and Schoenbohm used Schoenbohm's boat to successfully retrieve a 35-kilogram load of cocaine, Defendant Hodge introduced Schoenbohm to the alleged "boss," Defendant Quinones-Davila, in St. Croix. Defendant Quinones-Davila told Schoenbohm that he had done a great job and indicated that there would be more work to do. There is also evidence that Schoenbohm, Defendant Hodge, and Defendant Anibal Vega-Arizmendi again used Schoenbohm's boat to retrieve a 71-kilogram load of cocaine at mid-sea in October 2014, and that Defendant Hodge arranged for another conspirator—Cruz-Velez—to transport the drugs by airplane from St. Croix to Puerto Rico for sale. Evidence was also introduced through Defendant Quinones-Davila's post-arrest statements that he was aware of this aspect of the conspiracy—i.e., the use of Cruz-Velez's plane to transport drugs from St. Croix to Puerto Rico for distribution. This evidence is sufficient to demonstrate that the common goal of the conspiracy was to acquire illegal drugs and distribute them for profit.

Evidence of continued attempts to retrieve cocaine at mid-sea between November 2014 and November 2015 is sufficient to establish that the conspiracy's central purpose to acquire illegal drugs and distribute them for financial gain was "constant and pervasive." *Kelly*, 892 F.2d at 259. Testimony, text messages, and audio recordings show that Defendants Quinones-Davila and Hodge organized an attempted retrieval of cocaine in November 2014, and Schoenbohm testified that Defendant Gutierrez-Calderon provided him with a firearm to use as protection in the retrievals of cocaine.

Evidence in the record also supports a finding that Defendants Hodge, Anibal Vega-Arizmendi, and Jean Vega-Arizmendi participated in an attempted mid-sea retrieval of cocaine in December 2014. Schoenbohm testified that he was present for discussions at Chenay Bay regarding the December 2014 attempt, and that Defendants Hodge, Gutierrez-Calderon, Anibal Vega-Arizmendi, and Jean Carlos Vega-Arizmendi were present. He further testified that the co-conspirators made various attempts to retrieve a 30-kilogram load of cocaine following these discussions. DEA surveillance photographs provide corroboration of Schoenbohm's testimony regarding the December 2014 attempts.

Testimony, text messages, audio recordings, and other evidence reveal that Defendants Quinones-Davila, Hodge, and Anibal Vega-Arizmendi participated in November 2015 attempts to retrieve cocaine. There is also testimony from Schoenbohm and law enforcement, as well as other evidence—including audio recordings, text messages, and DEA surveillance—that Defendants Gutierrez-Calderon, Quinones-Davila, Hodge, and Burgos were involved in a successful mid-sea retrieval of cocaine on November 13-14, 2015—and that the DEA seized 87 kilograms of cocaine in four suitcases following this successful retrieval.

In sum, the Court concludes that the Government's evidence was sufficient for a rational

jury to conclude beyond a reasonable doubt that the central purpose of the conspiracy was to acquire illegal drugs and distribute them for financial gain, and that this central purpose was "constant and pervasive" throughout the life of the single conspiracy. *Kelly*, 892 F.2d at 259.

### b. Continuous Cooperation Towards Continuous Result

The second *Kelly* factor asks whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators. When interpreting the second *Kelly* factor, the Third Circuit "look[s] to whether there was evidence that the activities of one group were necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture." *United States v. Rigas*, 605 F.3d 194, 214–15 (3d Cir. 2010) (quotations omitted). In *United States v. Fausnaught*, 380 F. App'x 198 (3d Cir. 2010), a circuit panel concluded that the second *Kelly* factor favored finding a single conspiracy where there was "substantial evidence of activities by members of the conspiracy that were necessary to further its overall purpose of making money through the sale of drugs . . . [including,] the transportation of drugs; the supply, distribution and sale of the drugs; storage of the drugs at the residences of members of the conspiracy; and travel to Amsterdam to obtain materials for the growing of marijuana." *Id.* at 202.

The Court concludes that the Government presented sufficient evidence for a rational jury to find that the second *Kelly* factor—whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators— was established beyond a reasonable doubt. The evidence at trial supports a finding that the activities of the Defendants were necessary or advantageous to the success of the overall purpose of the conspiracy—to acquire illegal drugs and sell them for financial gain. There is evidence that Defendant Quinones-Davila communicated with cocaine suppliers to arrange for the mid-sea

16

retrieval of cocaine using GPS coordinates to identify the location of the exchanges; that there was communication between Schoenbohm and Defendant Quinones-Davila, and between Schoenbohm and Defendant Hodge regarding GPS coordinates to arrange the mid-sea transfer of cocaine from a Venezuelan vessel to boats operated by members of the conspiracy; that Defendants Quinones-Davila, Hodge, and Gutierrez-Calderon arranged to have individuals and/or resources available to accomplish jobs—including, Schoenbohm's boat, a crew, and a plane and pilot to transport drugs from St. Croix to Puerto Rico; that Defendant Gutierrez-Calderon provided Schoenbohm with a firearm for protection while retrieving drugs; and that Defendant Hodge often played a pivotal role on St. Croix in coordinating the activities of members of the conspiracy in connection with the attempted retrievals, including storing cocaine in his home. There is also evidence that Defendants Hodge, Anibal Vega-Arizmendi, Jean Vega-Arizmendi, and Burgos participated in successful or unsuccessful ventures to retrieve cocaine by going out on the boats to retrieve drugs. This evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that the Defendants engaged in activities that were necessary or advantageous to the overall success of the conspiracy.

### c. Overlap Among Participants

The third *Kelly* factor involves the extent to which the participants overlap in the various dealings. In the context of the third *Kelly* factor, courts have noted that "it is not necessary for the government to prove 'each defendant knew all the details, goals, or other participants in order to find a single conspiracy.'" *United States v. Ha Ngo*, 451 F. App'x 220, 224 (3d Cir. 2011) (quoting *Kelly*, 892 F.2d at 260); *see also United States v. Perez*, 280 F.3d 318, 346-48 (3d Cir. 2002) ("To establish a single conspiracy, the prosecutor need not prove that each defendant knew all the details, goals or other participants.") (quotations omitted). Further:

> [A] single conspiracy can involve one pivotal figure who directs illegal activities while various combinations of other defendants further those activities in different ways and at

different times. A single conspiracy finding does not require every member to participate in every transaction.

*Padilla*, 982 F.2d at 115 (quoting *United States v. DeVarona*, 872 F.2d 119 (5th Cir. 1989) (quotations omitted)). "Disputes between participants do not necessarily fracture a single conspiracy." *Kelly*, 892 F.2d at 260 (holding that "infighting among the conspirators" did not fracture a single conspiracy where the "common catalyst of the disputes was greed" and "[n]o player wanted to be left out of the operation," which did not constitute evidence of "separate conspiracies working at cross-purposes to each other") (citing *DeVarona*, 872 F.2d at 120; *United States v. Camiel*, 689 F.2d 31 (3d Cir. 1982)); *see also United States v. Praddy*, 725 F.3d 147, 153 (2d Cir. 2013) (noting that "so long as the participants agree on the 'essential nature' of the enterprise and 'their goals are not at cross purposes,'" the individual goals of each of the participants need not be congruent for a single conspiracy to exist) (citations omitted).

With regard to the third *Kelly* factor—the extent to which the participants overlap in the various dealings—the Court finds that the overlap of the alleged co-conspirators in the illegal activities as set forth in the various Counts of the Indictment together with the evidence previously discussed is sufficient for a rational jury to find beyond a reasonable doubt that this factor is satisfied. While not every Defendant participated in every attempted retrieval of cocaine, there is no requirement for "the government to prove 'each defendant knew all the details, goals, or other participants in order to find a single conspiracy.'" *Ha Ngo*, 451 F. at 224 (quoting *Kelly*, 892 F.2d at 260).

Further, evidence proffered regarding disputes between Defendants Quinones-Davila and Hodge, and Quinones-Davila's unwillingness to work with Hodge, does not negate a finding of a single conspiracy—particularly where there is evidence in the record supporting a finding that Defendant Quinones-Davila and Hodge were involved together in attempts to retrieve cocaine at

mid-sea in August, October, and November 2014, and again in November 2015.[4] The evidence at trial indicated that a dispute had arisen between Defendant Hodge and Defendant Quinones-Davila by the time of the attempted retrievals of cocaine in November 2015. As a result of this dispute, there was evidence that Defendant Hodge was not to be told about the Quinones-Davila job, or, alternatively, that he was not to be told that the job was for Quinones-Davila. Nonetheless, as demonstrated by the evidence discussed herein, Defendant Hodge became involved in the November 2015 event and assisted in the same attempted retrievals of cocaine that Defendant Quinones-Davila organized. That members of the conspiracy may have attempted to conceal Defendant Hodge's involvement in the November 2015 attempts from Defendant Quinones-Davila or to conceal from Defendant Hodge that the job was for Defendant Quinones-Davila in light of their dispute does not fracture the existence of a single conspiracy. There is no requirement that each defendant be aware of all of the participants in the endeavor. Nor was there any evidence that Defendants Quinones-Davila and Hodge were working at cross-purposes to each other. To the contrary, whether Defendants Quinones-Davila and Hodge wanted to work together or not on the November 2015 retrievals, they in fact did work together on those retrievals, and the common goal, continuous cooperation needed to achieve the result, and overlap among participants remained consistent.[5]

In view of the foregoing, the Court concludes that, when viewed in the light most favorable to the Government, there is sufficient evidence for a rational jury to find the existence of the single

---

[4] As the Government notes, Defendant Hodge focuses on the November 2015 event only, and presents no argument with respect to evidence of his involvement along with Defendant Quinones-Davila in earlier successful and unsuccessful attempts to retrieve cocaine, as charged in the Indictment.

[5] Defendant Hodge's Olympic competitor analogy is clearly inapt. (Dkt. No. 1606 at 4).

conspiracy charged in the Indictment beyond a reasonable doubt. Accordingly, Defendant Hodge's Motion for Judgment of Acquittal on Count 1 will be denied.

### 2. Count 2

Count 2 charges that between November 10, 2014 and November 12, 2014, Defendant Hodge and others, while aiding and abetting each other, did knowingly and intentionally attempt to possess, with intent to distribute more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride. (Dkt. No. 1216 at 9).

Defendant Hodge argues that, despite evidence that he was on the Scorpion on November 12, 2014 with Schoenbohm during a voyage approximately 65 nautical miles off the south coast of St. Croix to retrieve cocaine, the Government failed to present any evidence of "the role that Defendant Hodge played in being on Schoenbohm's boat" such that the Government failed to meet its burden to demonstrate that Defendant Hodge aided and abetted the attempted retrieval. (Dkt. No. 1606 at 7). In so arguing, Defendant ignores the evidence introduced at trial, which was sufficient, when viewed in the light most favorable to the Government, to establish Defendant Hodge's guilt beyond a reasonable doubt on Count 2.

The evidence at trial established that Defendant Hodge played a central role in coordinating the November 2014 attempted retrieval of an 80-kilogram load of cocaine. Defendant Hodge contacted Schoenbohm to request his help in identifying the location of a supply vessel at mid-sea using GPS coordinates—GPS coordinates which Defendant Hodge possessed and which he shared with Schoenbohm. Defendant Hodge then accompanied Schoenbohm on the Scorpion on an unsuccessful attempted retrieval of the load of cocaine on November 12, 2014. This evidence is sufficient to establish that Defendant Hodge possessed information about the location of a supply vessel from which the co-conspirators would retrieve cocaine; recruited Schoenbohm's assistance

in identifying the location of the supply vessel using GPS coordinates, and in going out to sea to retrieve the cocaine; and participated in an attempted retrieval of the cocaine at mid-sea. In other words, when viewed in the light most favorable to the Government, the record evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that Defendant Hodge's actions demonstrated that, while aiding and abetting another, he knowingly and intentionally attempted to possess cocaine with intent to distribute it. In view of this evidence, Defendant Hodge's contention that there was insufficient evidence as to his role on Schoenbohm's boat is meritless. Accordingly, Defendant's Motion for Judgment of Acquittal as to Count 2 will be denied.

### 3. Count 3

Count 3 charges that on or about December 13, 2014, and December 14, 2014, Defendant Hodge and others, while aiding and abetting each other, did knowingly and intentionally attempt to possess, with intent to distribute more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride. (Dkt. No. 1216 at 10). The Court finds that, when viewed in the light most favorable to the Government, the evidence presented at trial was sufficient for a rational juror to find Defendant Hodge guilty of Count 3 beyond a reasonable doubt

Defendant Hodge argues that the only evidence at trial relevant to his participation in the December 2014 event was Schoenbohm's testimony that Defendant Hodge was present at Chenay Bay along with co-conspirators Jean Carlos Vega-Arizmendi and Anibal Vega-Arizmendi, such that the jury's finding of guilt on Count 3 was based on "guilt by association." (Dkt. No. 1606 at 8). Defendant Hodge further argues that there was no evidence as to when the events in question occurred. Once again, Defendant Hodge's argument ignores evidence presented at trial.

As described above, Schoenbohm testified that Defendant Hodge called him in December 2014 about using his boat, the Scorpion, to retrieve a load of cocaine, and that Defendant Hodge

arranged for co-conspirators Cruz-Albert and Rohlsen-Arizmendi to pick up Schoenbohm in St. Thomas and transport him by boat to St. Croix. Once on St. Croix, Schoenbohm observed Defendants Hodge, Anibal Vega-Arizmendi, Jean Carlos Vega-Arizmendi, and Omy Gutierrez-Calderon at Chenay Bay during discussions about the retrieval of a 30-kilogram load of cocaine. Schoenbohm testified that Defendant Anibal Vega-Arizmendi, Cruz-Albert, and Rohlsen-Arizmendi made two unsuccessful attempts to retrieve the cocaine on the Scorpion. Schoenbohm's testimony is supported by DEA surveillance photographs taken on December 13 and 14, 2014. Following a third attempt, Schoenbohm received a phone call from Defendant Hodge informing him that the attempt had been successful and that the Scorpion was in Puerto Rico.

Thus, there was evidence that Defendant Hodge was instrumental in the attempt to possess the 30-kilogram load of cocaine in December 2014 in that he took a substantial step—organizing Schoenbohm's travel to St. Croix to ensure the use of his boat in the attempts to retrieve cocaine—to achieve this goal. When viewed in the light most favorable to the Government, this is evidence from which a rational juror could conclude beyond a reasonable doubt that Defendant Hodge, while aiding and abetting others, knowingly and intentionally attempted to possess cocaine with the intent to distribute it. Accordingly, Defendant Hodge's Motion for Judgment of Acquittal as to Count 3 will be denied.

### 4. Count 5

Count 5 charges that on or about November 9, 2015 through November 12, 2015, Defendant Hodge and others, while aiding and abetting each other, did knowingly and intentionally attempt to possess, with intent to distribute more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride. (Dkt. No. 1216 at 12). Defendant Hodge argues that the Government's evidence failed to establish that he aided and abetted these attempted

retrievals of cocaine. (Dkt. No. 1606 at 9-10). The Court finds that, when viewed in the light most favorable to the Government, the Government introduced sufficient evidence for a rational juror to find Defendant Hodge guilty of Count 5 beyond a reasonable doubt.

The Government introduced evidence that Defendant Hodge arranged a meeting with Schoenbohm and other members of the conspiracy on St. Croix in November 2015 where they discussed an upcoming job. Schoenbohm testified that Defendant Hodge introduced him to a boat captain, Santiago-Colon, who used Schoenbohm's boat in an attempt to retrieve cocaine. The Government also introduced evidence that Defendant Hodge contacted Schoenbohm in order to retrieve suitcases from Schoenbohm's boat for use in an additional attempt to retrieve cocaine using another vessel—the green Spider. When viewed in the light most favorable to the Government, this evidence is sufficient for a rational juror to find beyond a reasonable doubt that Defendant Hodge aided and abetted the attempted retrievals of cocaine at mid-sea between November 9 and 11, 2015. In other words, the Government's evidence is sufficient to allow a rational juror to conclude that the attempted retrievals of cocaine occurred; that Defendant Hodge knew that the attempts were going to occur; and that Defendant Hodge's actions in organizing a meeting among members of the conspiracy, arranging for Santiago-Colon to serve as a boat captain, and arranging to get suitcases for use in the retrieval of cocaine facilitated the attempted retrievals. Accordingly, Defendant Hodge's Motion for Judgment of Acquittal as to Count 5 will be denied.

### 5.  Count 6

Count 6 charges that on or about November 14, 2015, Defendant Hodge and others, while aiding and abetting each other, knowingly and intentionally possessed cocaine with the intent to distribute it. Defendant Hodge argues that the Government's evidence failed to prove that he was

aware that the offense was going to be committed or that he took any action to facilitate the offense. (Dkt. No. 1606 at 10-16). The Court concludes that, when viewed in the light most favorable to the Government, the evidence presented at trial was sufficient to permit a rational jury to find Defendant Hodge guilty of Count 6 beyond a reasonable doubt.

As discussed above, the Government introduced a text message from Defendant Hodge to Schoenbohm on November 12, 2015, instructing Schoenbohm to provide his name to Defendant Gutierrez-Calderon to arrange a transfer of money through Western Union. The Government presented evidence that Schoenbohm in fact provided his name to Defendant Gutierrez-Calderon, and that money was transferred to Schoenbohm in order for him to buy fuel for his boat for use in the retrieval of cocaine. The Government introduced additional evidence that on November 13, 2015, Schoenbohm, Defendant Hodge, and Rohslen-Arizmendi brought a gas tank to Coakley Bay. The gas tank was loaded onto Schoenbohm's boat, which was then used in the successful retrieval of an 87-kilogram load of cocaine. Defendant Hodge was arrested near the beach at Knight's Bay in the general vicinity of the area where his co-conspirators were later arrested and four suitcases containing 87 kilograms of cocaine were discovered. Schoenbohm identified these suitcases as the same suitcases that Defendant Hodge retrieved for use in the unsuccessful attempts earlier that week. Defendant Hodge further acknowledged in a post-arrest statement to law enforcement that he knew the drugs were being brought in and that he was paid to act as a look-out.

Contrary to Defendant Hodge's argument, when viewed in the light most favorable to the Government, the evidence is sufficient to allow a rational jury to find him guilty on Count 6 even absent Defendant Hodge's statement to law enforcement. This evidence includes: (1) Defendant Hodge's participation in arranging a Western Union transfer to supply money to buy fuel for Schoenbohm's boat; (2) Defendant Hodge's participation in the delivery of a gas tank that was

loaded onto the boat before the successful retrieval; (3) Defendant Hodge's presence at approximately 2 o'clock in the morning near the beach where his co-conspirator's were arrested following the successful retrieval of cocaine (from which his participation as a look-out may be inferred even absent his statement to law enforcement); and (4) the identification of the suitcases containing the 87 kilograms of cocaine as the same suitcases Defendant Hodge had retrieved for use in earlier unsuccessful attempts to obtain cocaine. This evidence is sufficient to permit a conclusion by a rational jury that Defendant Hodge knew that the retrieval of cocaine was going to be attempted, that it ultimately was successful, and that Defendant Hodge took actions that facilitated the commission of the offense. Accordingly, Defendant Hodge's Motion for Judgment of Acquittal as to Count 6 will be denied.

## IV.    CONCLUSION

In sum, the Court finds that, viewing the totality of the evidence presented during trial in the light most favorable to the Government, a rational trier of fact could find Defendant Hodge guilty beyond a reasonable doubt as to Counts 1, 2, 3, 5, and 6. Accordingly, Defendant Hodge's Motion for Judgment of Acquittal will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date:  December 21, 2018

_____/s/_____
WILMA A. LEWIS
Chief Judge